## Appleton et al. v. Southern Trust Company et al.

(Decided June 14, 1932.)

COLEMAN TAYLOR and OSCAR M. SMITH for appellants.

E. S. PENICK, S. Y. TRIMBLE, and PETRIE & STANDARD, for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

T. C. Mason was a man of affairs in Todd county, but became financially involved. Domestic troubles seem also to have arisen. On July 24, 1926, Mason turned over his property to his brother-in-law, Eugene Flowers, for a settlement of his obligations, and left home. The paper he executed was in form a general power of attorney, but was treated by Flowers as an assignment for the benefit of creditors, although it did not vest title in him. Mason was the guardian of his brother and sister, with Flowers surety on his bond. Certain land in which his wards and an infant niece had an interest was sold, and Mason executed bonds so that the proceeds might be paid him. Flowers, Orndorff, and Johnson were sureties on those bonds. Two days after his departure, suit was filed against Mason by his wards, through next friends, setting up his indebtedness to them and his failure and refusal to make settlements as their guardian. The sureties joined in the suit as plaintiffs and set up their liability and a right to be indemnified against loss. Summons was issued to Todd county and attachments were levied upon Mason's property. This precipitated other creditor's attachment suits in rapid order. After a time Flowers filed a suit as an assignee under the instrument referred to, and all the cases were consolidated and referred to the master commissioner for a settlement of Mason's affairs. Nearly three years later, while the suits were pending Mason returned, entered his appearance, and testified. During the course of the years, different orders were made and judgments entered adjudging the respective rights of the numerous parties. Mason and his wards and sureties prosecute the appeal.

The principal question involved is whether the court erred in discharging the attachment issued in the first suit filed by the wards and sureties, which had the effect of eliminating them in the distribution of the insolvent estate. The grounds of attachment were not attacked, and it was discharged only because under the circum-

stances the plaintiffs should have proceeded by warning order instead of by summons; that is, that the issuance of the summons was not in good faith, and hence that the action was not properly commenced.

Section 39, Civil Code of Practice, provides that the commencement of a suit shall be by filing a petition or statement of account and "by causing a summons to be issued, or a warning order to be made, thereon." Section 2524, of the Statutes, provides:

"An action shall be deemed to have been commenced at the date of the first summons or process issued in good faith from the court or tribunal having jurisdiction of the cause of action."

The making of a warning order under circumstances justifying it constitutes a commencement of the action, even though the defendant later entered his appearance. Hoffman v. Brungs, 83 Ky. 400. Section 57 of the Civil Code of Practice authorizes a warning order when any one of several conditions is made to appear, but the only one claimed to have existed in this case is that the defendant, Mason, was at the time "a non-resident of this State and believed to be absent therefrom." When a plaintiff has a summons issued on his petition against a defendant known by him to be a nonresident, it cannot be said that the action was thereby commenced. Traders' Deposit Bank v. Hoffman, 99 Ky. 240, 35 S. W. 631, 18 Ky. Law Rep. 148. It is otherwise where it is not shown that the plaintiff or his attorney knew the defendant to be a nonresident at the time the summons is issued. Walston v. City of Louisville, 66 S. W. 385, 23 Ky. Law Rep. 1852.

An attachment cannot legally issue until an action shall have been commenced or unless it is done at the same time. If it has been issued previously, it is a nullity. Civil Code of Practice, sec. 194; Redwine v. Underwood, 101 Ky. 190, 40 S. W. 462, 19 Ky. Law Rep. 366; Harbour-Pitt Shoe Company v. Dixon, 60 S. W. 186, 22 Ky. Law Rep. 1169; Smith v. Dungey, 178 Ky. 702, 199 S. W. 777. The question, therefore, is resolved into one of fact, or rather whether it is a logical deduction from the facts that the plaintiffs or any of them knew that Mason was at the time a nonresident of the state and that they believed him to be absent therefrom. Unless that was

shown, it cannot be said that the issuance of the summons instead of a warning order was not in good faith, and therefore that the action had not been commenced within the terms of the statute.

The petition contains this allegation:

"Plaintiffs state that the said T. C. Mason is now absent from the State of Kentucky and that his whereabouts are unknown to any of said plaintiffs . . . and they further believe that he has abandoned his estate and all of his property and business," etc.

An affidavit of Flowers filed with the petition states:

"That T. C. Mason is now absent from the State of Kentucky and has left the State, as he is informed, and abandoned his property."

These statements establish one of the two requisite conditions under which a warning order may have issued, to-wit, that the defendant was absent from the state. They did not, however, declare him to be a nonresident of the state, so a warning order could not have been properly issued on the pleading had one been asked. Arthurs v. Harlan, 78 Ky. 138. We must therefore look further into the record for evidence that he was in fact a nonresident and that some of the plaintiffs knew him to be such; hence that they should have proceeded by warning order to obtain constructive service upon him.

Flowers testified he knew that Mason was away, and that he thought him insolvent. After Mason's return, he testified that he had executed the power of attorney at Russellville about 4 o'clock in the afternoon of July 24, 1926, left there that night for Bowling Green, then went to Jacksonville, Fla., and stayed at different places in that state until he located at Jacksonville. He had previously told Flowers, who discouraged his action, that he wanted him "to take the estate and wind it up as though he was dead, in a way." He did not tell anybody where he was going, although his sister begged him to do so. Upon interrogation by the attorneys for some of the appellees, he offered to state what he did tell Flowers, but the subject was not pursued further.

458

A person may be a citizen of the state and yet a non-resident. Harris v. John, 29 Ky. (6 J. J. Marsh.) 257. A temporary residence out of the state, even for an indefinite period, will not constitute the party a nonresident if at the time of departure and during his absence he has an intention to return to the state. Erwin v. Allen, 124 Ky. 458, 99 S. W. 322, 30 Ky. Law Rep. 607; Kentucky Union Company v. Lovely, 179 Ky. 459, 200 S. W. 950. To effect a change in legal residence for voting or administration purposes, there must be an intention to abandon the old domicile and not to return to it and an intention to acquire a new residence as a permanent home; the intention being coupled with a corresponding act evidencing those purposes. 9 R. C. L. 542; Burr's Admr. v. Hatter, 240 Ky. 721, 43 S. W. (2d) 26. Such' change constitutes nonresidence for all purposes, but nonresidence for every purpose does not require such a radical change in domicile. Looking at the other extreme, it cannot be said that every absence from the state of domicile make one a nonresident. The annotations, to Winakur v. Hazard, 140 Md. 102, 116 A. 850, 26 A. L. R. 177, cover the subject of what constitutes nonresidence for the purpose of an attachment. As stated there, the reason generally assigned for an attachment on that ground is to acquire jurisdiction. The possibility or impossibility of obtaining actual service is a factor often regarded, but it is not recognized as an absolute, or exclusive test. There are other cases taking a contrary view. See Jackson v. Perry, 13 B. Mon. 231. A review of the authorities shows some nice distinctions, and leaves the question to be decided upon the peculiar facts and for the particular purpose. 46 C. J. 493; 54 C. J. 712; 26 A. L. R. 180, note. It seems pretty well agreed that, to constitute one a nonresident within the contemplation of these provisions relating to acquisition of jurisdiction, an actual residence elsewhere is meant. and there must be a settled, fixed abode out of the state, though it may not be permanent and the animus revertendi need not be abandoned. It was held in Luvall v. Luvall, 228 Ky. 577, 15 S. W. (2d) 433, that "residence" within the meaning of the divorce laws is where the party lives. Before a discharge of the plaintiff's attachment was authorized, it must have been made to appear when the suit was filed that: (1) Mason was a nonresident of the state as thus defined; (2) was believed by plaintiffs to be absent therefrom; and as a reasonable conclusion that (3) they did

not in good faith have a summons issue instead of a warning order made.

No question is raised as to the knowledge or lack of knowledge on the part of any of the plaintiffs, except Flowers. With the facts in hand, could he in good conscience have sworn within forty-eight hours after Mason left that he was not in Kentucky and that he was living out of the state with a purpose to establish a settled, fixed abode outside Kentucky? Such conclusion could only have been a surmise. Flowers had insisted with Mason that he ought not to do what he was doing—to sacrifice his property and go away. Aside from any lack of knowledge he then had as to Mason's ultimate destination, could he have reasonably and safely concluded that within so brief a period Mason had actually abandoned his home, family and property within the intention to live elsewhere and that he would not upon reflection return? The man had simply run away from his troubles. It did develop that he would remain away for an extended period. He returned and participated in the settlement of his affairs. But we must look at the situation as it appeared at the time and not be influenced by subsequent knowledge or developments. In our opinion, the facts disclosed were not sufficient to justify the conclusion that the plaintiffs did not have the summons issued in good faith, and therefore that the attachment should have been sustained.

There are a number of conflicting contentions between the parties on this appeal, but the primary one is the validity of plaintiffs' attachment lien, consequently its superiority over others. In this voluminous record there is no definite statement of assets and liabilities or claims, and we are unable to determine the effect of our conclusion. It appears that no final distribution of proceeds had been ordered when the record was made up for the appeal; but the best we can determine from that record is that, after satisfying the mortgages and other liens admitted to have priority, the remainder will be sufficient to satisfy the appellants claims. Hence we do not pass upon other questions.

The judgment is reversed, with directions to sustain the appellants' attachment, and for consistent proceedings.