CABINET FOR HUMAN RESOURCES,
Appellant,

v.

KENTUCKY STATE PERSONNEL BOARD; Barbara A. Bargo, Alexis Danielle Bray, Majorie L. Brown, Dinah Burton, Anita O. Casey, Margaret M. Cook, Elveree Crawley, Sharon Davenport, Anne R. Flynn, Janice L. Gates, Celia G. Gilbert, Judith T. Gordon, Dietta L. Guess, Sandra R. Houchen, Estalene S. Jenkins, Mildred Lewis, Sandra K. Mathes, Luanne H. McQueary, Lelia McReynolds, Joan C. Merryman, Jennifer L. Mitchell, Ella Jean Neikirk, Peggy Nelson, Brenda Parker, Eva M. Patton, Glyndon G. Powell, Carol J. Rawlings, Martha M. Sears, Joyce M. Sinclair, Mickey J. Smith, Amie Christine Sparks, Barbara A. Stevenson, Bernice E. White, Nancye Whiting, Appellees.

CABINET FOR HUMAN RESOURCES,
Appellant,

v.

KENTUCKY STATE PERSONNEL BOARD; Barbara A. Bargo, Alexis Danielle Bray, Majorie L. Brown, Dinah Burton, Anita O. Casey, Margaret M. Cook, Elveree Crawley, Sharon Davenport, Anne R. Flynn, Janice L. Gates, Celia G. Gilbert, Judith T. Gordon, Dietta L. Guess, Sandra R. Houchen, Estalene S. Jenkins, Mildred Lewis, Sandra K. Mathes, Luanne H. McQueary, Lelia McReynolds, Joan C. Merryman, Jennifer L. Mitchell, Ella Jean Neikirk, Peggy Nelson, Brenda Parker, Eva M. Patton, Glyndon G. Powell, Carol J. Rawlings, Martha M. Sears, Joyce M. Sinclair, Mickey J. Smith, Amie Christine Sparks, Barbara A. Stevenson, Bernice E. White, Nancye Whiting, Appellees.

Nos. 91–CA–1325–MR, 91–CA–1790–MR.

Court of Appeals of Kentucky.

June 19, 1992.

Rehearing Denied Aug. 7, 1992.

Discretionary Review Denied by Supreme Court March 12, 1993.

Maria T. Geisler, Frankfort, for appellant.

Sara L. Pratt, Washington, DC, Steven Bolton, Frankfort, for appellees.

Before LESTER, C.J., and JOHNSON and SCHRODER, JJ.

LESTER, Chief Judge.

This is an appeal from judgment supported by an opinion whereby the appellee, Kentucky Personnel Board, was directed to upgrade the employment classification of the appellee-nurses and awarding them back wages retroactively.

The most succinct recitation of the procedural and factual background we find in the record are those of the trial judge and we have no hesitation in adopting them as our own:

This action is an appeal of an order of the Kentucky Personnel Board sustaining the recommended findings, conclusions and order of its hearing officer upholding actions of the Cabinet for Human Resources in granting two successive grade and salary increases for all nursing classifications within the Cabinet with the single exception of the position of Nurse Consultant/Inspector (NC/I).

Appellants are thirty-four (34) employees and former employees of the appellee Cabinet for Human Resources ("Cabinet"). Each appellant is, or was employed as a Nurse Consultant/Inspector ("NC/I").

Each appellant filed an administrative grievance with the Cabinet in September 1988 or February 1989, or both, alleging that they had been penalized as a result of action taken by the Cabinet. In September 1988 and February 1989, the Cabinet upgraded the job classification of other nurses and increased their salaries, while leaving the appellants' classification and pay rate unchanged.

The appellants appealed to the Personnel Board from the Cabinet's denial to increase their classification and pay rate, but the Board dismissed the appeals.

*Factual Background*

Though all 34 appellants are or were NC/I's, they worked in different departments of the Cabinet. The majority worked for the Division of Licensing and Regulation, though some worked in the Department for Medicaid Services. Though their duties naturally varied somewhat according to their precise loca-

tion, they nonetheless were responsible for performing similar functions. All of the NC/I's were classified as a Grade 11 and received a starting salary of $1,683 per month.

The class specification for NC/I's provides that they perform investigative and technical consultative services in the licensing and provision of health care programs. Specific duties of all NC/I's include: inspection of health care facilities to insure compliance with licensing laws and regulations; review of administrative and organizational aspects of facilities; investigation of health consumer complaints; development of educational material. NC/I's are required to be registered nurses with four years' experience.

The first action of which the appellants complained took place in September 1988. A charge nurse, which requires an RN license plus two years experience, was upgraded from Grade 10 to 11 and the pay was increased to $1,833 per month. The Nurse Administrator, which appellants claim is a similar position to their own, was upgraded from 11 to 13. The salary was increased to $2,228 per month. A Nurse Administrator is required to have an RN license and three years of experience.

In February 1989, nursing positions were again reviewed by the Cabinet. All positions except NC/I's were again upgraded and given additional pay increases.

Pursuant to the appropriate standard of review set fourth in KRS 18A.100 the court found that the Personnel Board's decision was not supported by law and in so doing delivered a well reasoned opinion as follows:

As a preliminary matter, the appellants must establish that they were "penalized" in order to be entitled to relief. Appeals to the Personnel Board and to this Court are proper only for a "dismissal, demotion, suspension, or other penalization" of an employee. KRS 18A.100(1). Since none of the appellants were dismissed, demoted or suspended, their relief must be predicated upon a penalization. That term, in turn, is defined by KRS 18A.005(17).

Penalization includes a diminution in rank or level of an employee without proper cause, and further includes "the abridgement or denial of other rights granted to state employees." KRS 18A.005(17). This Court concludes that the appellants were indeed penalized by being denied statutorily granted rights of state employees.

Kentucky state employees are all granted rights under a merit system of employment, as articulated in KRS Chapter 18A. These statutes, and the accompanying regulations, require that employee classifications be based upon responsibilities and qualifications. See KRS 18A.110(7) and 101 KAR 2:020. It is not disputed that the classifications themselves, such as NC/I and Nurse Administrator, were indeed based on such considerations. Each class required various levels of education and experience and entailed different responsibilities. However, it is the interrelationship among the classes, as opposed to the classes themselves, that is at issue here. The Cabinet and the Personnel Board apparently ignored that interrelationship, resulting in a denial of the appellants' rights.

Of all the categories of nurses recognized by the Cabinet—a total of nine different classes—NC/I classification requires the most education and experience. Logic, and more importantly, the merit system, dictate that salary must be commensurate with education and experience. However, as a result of the Cabinet's action in February 1989, NC/I's were paid the least amount of *all* classes of nurses. In February 1989, a licensed practical nurse, which requires less education than an RN, made more money than NC/I's. Additionally, these LPN's needed only one-fourth the experience as NC/I's. Such a salary structure is based on anything but merit.

The Cabinet, in defense of its actions, gave three reasons for its chosen course. First, the Cabinet claimed it was unable to increase the salaries of NC/I's be-

cause of budgetary constraints. The fallacy of this justification is self-evident. In September 1988, at least five classes of nurses were given pay increases. A mere five months later, all other nurses were again awarded pay increases with the exception of the NC/I's. The Cabinet's budgetary constraints were obviously of no concern when these salaries were adjusted.

Second, the Cabinet asserted it was having difficulty recruiting and retaining nurses in positions other than NC/I. While the Cabinet did present some evidence that nurses were in demand, appellants likewise presented evidence that NC/I's were in demand also. The turnover rates, while certainly not the same, were by no means far apart: 19.72% for nurses in full-time care facilities and 16.33% for NC/I's. Such a small discrepancy cannot support such a great difference in classification and in pay.

Finally, the Cabinet also drew a distinction between NC/I's and other nurses based upon their responsibilities and their work environment. NC/I's are the only nurses who do not work in a 24–hour–a–day, seven day-a-week facilities providing direct patient care. Rather, NC/I's provide care at a different level. Basically, they supervise other nurses to insure compliance with laws and regulations. Their primary duty is not to provide hands-on care for health care patients. This distinction is well-founded, but does not provide a rational basis for the Cabinet's action. What the Cabinet seems to overlook is that NC/I's rely on their education and nursing experience to meet their responsibilities. Why else would they be required to have more experience than other nurse employed by the Cabinet?

In short, then, appellants are entitled to be paid according to their education and experience. This is a fundamental tenet of the merit system.

The first issue presented is appellants' claim that an indispensable party was absent from this cause. The Cabinet argues that the matter was preserved for review "by including this point in its brief to the Circuit Court." Counsel then asks, by way of reply brief, "[h]ow much is enough" "notice to the parties below the [sic] preserve the argument." The answer to the query lies in the Civil Rules and more specifically, CR 19.01. When one litigant believes there to be an indispensable party it should request the court to order joinder by the simple expedient of filing a motion. If the court concurs then service of process shall issue, but in any event, it should be accomplished by a pleading or motion and a brief is neither. CR 7.01. Therefore, appellant did not preserve the issue in the trial court nor did it do so in this Court, for it failed to raise the point in the prehearing statement, and absent such we will not review the question. CR 76.-14(6).

The next contention surrounds the definition of penalization which, for the purposes of state personnel statutes, is found at KRS 18A.005(17):

"Penalization" shall include, but not be limited to, demotion, dismissal, suspension, fines and other disciplinary actions, involuntary transfers; salary adjustments; any action that diminishes the level, rank, discretion, or responsibility of an employee without proper cause, including a reclassification or reallocation; and the abridgement or denial of other rights granted to state employees; ....

The circuit court found that the appellees were penalized by being denied statutorily granted rights of state employees. Not only do we agree with this reasoning, but also in other respects. We note that the statute is not limited to the reasons enumerated therein, but even if it were we deem the NC/I's to have been demoted by the promotion of all other eight classes of nurses. The same would be true as to diminishment in rank or level. The salary level was adjusted by increasing others to the NC/I level or above. When some eight out of nine classes of nurses were granted not one but two grade and salary increases, it defies logic to say that the one class was not penalized.

We now turn to the ludicrous contention that education and experience should not be considered *among* various

classes, but only within a class. On the other hand, we should look only to responsibilities and qualifications. As to the former, we note that one of the responsibilities of the NC/I's was to oversee the work of the other eight classes. Regarding qualification, we need look no farther than Webster's New Twentieth Century Dictionary Unabridged (2nd ed. 1979) to learn that the term is defined as:

> any quality, knowledge, ability, experience, or acquirement that fits a person for a position, office, profession, etc.

Therefore, we conclude that qualifications mean education and experience, and we take the view that these should be the guideposts for every step in our merit system including but not limited to entry classification, promotion, salary grade establishment, etc., for to do otherwise would be to attain nothing more than some degree of mediocrity. To argue that state government should not consider education and experience in personnel policies of any nature whatsoever is to say that we do not seek the best possible people to serve the Commonwealth.

■ There is another consideration and that is fair play. We find it hard to justify from the record presented that appellant would elevate to an equal or higher plane all of its lesser qualified nurses to the exclusion of its best people in the field. We will not support such an injustice.

We find no merit in appellant's chaos-in-state-government argument.

Appeal No. 91–CA–1325 is dismissed.

The judgment in No. 91–CA–1790 is affirmed.

All concur.