RENDERED: JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0190-MR

ESTATE OF TAYLOR COLE, BY
CARLA MCDONOUGH,
ADMINISTRATRIX AND ESTATE
OF BRAXTON FIELDS, BY CARLA
MCDONOUGH, ADMINISTRATRIX                          APPELLANTS

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 20-CI-002271

TAYLOR BAREFOOT; BAREFOOT
CONSULTING, LLC; NAKED BY
SUNDAY, LLC; SAZERAC NORTH
AMERICA, INC.; AND SAZERAC OF
INDIANA, LLC                                        APPELLEES

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND K. THOMPSON,[1] JUDGES.

---

[1] Judge Kelly Thompson authored this Opinion before his tenure with the Kentucky Court of Appeals expired on December 31, 2022. Release of this Opinion was delayed by administrative handling.

THOMPSON, K., JUDGE: The Estate of Taylor Cole, by Carla McDonough, Administratrix and the Estate of Braxton Fields, by Carla McDonough, Administratrix (collectively the Estates), appeal from the Jefferson Circuit Court's order granting the motions to dismiss with prejudice for *forum non conveniens* and failure to join indispensable parties filed by Taylor Barefoot, Barefoot Consulting, LLC, Naked by Sunday, LLC (NBS), Sazerac North America, Inc. (Sazerac NA) and Sazerac of Indiana, LLC (Sazerac IN) (collectively the appellees). We vacate and remand as the circuit court acted prematurely in cutting off discovery and then dismissing the case in light of the very incomplete record before us which prevented the Estates from being able to adequately represent their position. Additionally, it is intolerable for two cases involving the victims of the same car crash to ultimately be litigated in two different states when they were both originally filed in Kentucky.

## FACTUAL AND LEGAL BACKGROUND

On March 7, 2020, Sazerac IN hosted a Mardi Gras party in Jeffersonville, Indiana, for its Crews C and D of its Northwest Ordinance Distilling plant. Sazerac IN rented the Carriage House, purchased the alcohol and contracted

with NBS to provide bartending services. NBS employed or contracted with bartenders[2] to serve drinks at the party.

Sazerac NA is a Delaware corporation with its principal place of business in Kentucky. Sazerac IN is limited liability company which at the relevant time was a Kentucky corporation. Both Sazeracs produce alcohol beverages but their exact relationship to one another is unclear at this juncture. The Carriage House is owned and operated by the Clark County Historical Society and Howard Steamboat Museum, Inc, an Indiana nonprofit corporation. NBS is an Indiana limited liability corporation.

Barefoot, a Kentucky resident, attended the party. Barefoot was a recruiter for Sazerac NA's New Albany plant. Barefoot was allegedly overserved at the party, became highly intoxicated and was allowed to drive her vehicle, leaving the party at around 9 p.m. At around 9:14 p.m., witnesses began calling 911 to report a vehicle driving north in the southbound lanes of I-65. The vehicle then exited and drove west in the eastbound lanes of I-265.

A collision occurred on I-265 in Indiana, in Floyd County, near New Albany, between Barefoot's vehicle and Cole's vehicle. In Cole's vehicle were the

---

[2] Whether these bartenders are employees of NBS or independent contractors has yet to be established, although NBS and the circuit court repeatedly referred to them as independent contractors. We do not even know if it was one bartender or more than one bartender. Therefore, we simply refer to them as the bartenders.

driver, twenty-one-year-old Cole (who was twelve weeks pregnant at the time), her three-year-old son, Fields, her friend Leah Onstott Dunn, and Dunn's child, T.J. All were transported to Louisville hospitals, where Cole, Fields, and Dunn were pronounced dead.

Cole and Fields had been living in Kentucky since December 2019. On the day of the accident, Cole, Fields, Dunn, and T.J. had visited the Mall St. Matthews. At the time of the accident, Cole was taking Dunn and T.J. to meet Dunn's husband at a Walmart in Clarksville, Indiana.

Cole and Fields were previously domiciled in Indiana and Cole retained her Indiana license and voting status. It was disputed where they were domiciled when the collision occurred. Dunn, her husband, and T.J. were Indiana residents, as was Field's father.

Barefoot was later charged by the State of Indiana with three counts of causing death when operating a vehicle while intoxicated, three counts of causing death when operating a vehicle with an alcohol concentrate equivalent (ACE) of .08 or more, and involuntary manslaughter (for the death of the fetus). She pled guilty to multiple criminal charges and was sentenced to a total of twenty years, twelve years in prison and an additional eight years probated.

McDonough, a Kentucky resident, who was the mother of Cole and the grandmother of Fields, filed probate actions in Jefferson District Court on the

basis that they were Kentucky residents. McDonough was appointed as Administratrix of their Estates. On April 1, 2020, she then filed wrongful death lawsuits on behalf of the Estates in Jefferson Circuit Court against Barefoot and Sazerac NA.

The Estates alleged that Barefoot was negligent in driving the wrong way on a one-way divided highway while intoxicated and caused the head-on collision which killed Cole and Fields. The Estates alleged that Sazerac NA through its agents was negligent in over-serving Barefoot and allowing her to drive away while intoxicated. The Estates further alleged that Barefoot should be civilly liable for violating criminal statutes and both defendants should be liable for punitive damages.

Sazerac NA answered and denied employing Barefoot, being responsible for the Mardi Gras party, and all other allegations against it. Sazerac NA then moved for an order of dismissal, or a stay based on *forum non conveniens*, and separately asked that all discovery be stayed in the interim. An order for the discovery stay was entered.

Sazerac NA argued in its motion to dismiss that Indiana was a superior forum because the accident and all alleged tortious activity occurred in Indiana, the state had significant public and private interests and was an appropriate forum that holds personal jurisdiction over all defendants and potential

defendants, including the Carriage House and NBS (and its employees) with venue

being appropriate where the motor vehicle accident occurred.  It further argued that

all occupants of Cole's vehicle were Indiana residents, all the first responders were

Indiana residents, as were the three witnesses listed in the police report, and the

overwhelming majority of the material evidence was in Indiana, including the

vehicles and blood tests of Barefoot.  It noted that Kentucky could not subpoena

non-party witnesses from Indiana, deferring to the Estates' choice of forum as less

reasonable when the decedents were Indiana residents, and opined that Indiana was

the jurisdiction with a significant public interest in this litigation.  In the

alternative, Sazerac NA argued that Indiana law should apply.  Sazerac NA sought

dismissal without prejudice.

In May 2020, Barefoot also filed a motion to dismiss under the

doctrine of *forum non conveniens*, arguing that because all operative facts alleged

in the complaint occurred in Indiana, either an Indiana or federal court[3] was the

---

[3] Unfortunately, because the parties do not have complete diversity of citizenship, the case could not be filed in or removed to a federal court in either state.  28 United States Code (U.S.C.) § 1332(a)(1).  This is regrettable as many of the difficulties with evidence being present in both Indiana and Kentucky, although within a relatively small geographic area between their southern and northern borders, would be alleviated as Federal Rules of Civil Procedure (Fed. R. Civ. P.) 45(c)(1)(A) and (c)(2)(A) provide federal district courts with the subpoena power to:  "command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person" and "command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]"

-6-

more convenient forum. In support of this motion, Barefoot explained that Indiana would have jurisdiction over the named defendants, allegations relating to violations of the Indiana State Code would require interpretation of Indiana law, and proof would come from Indiana law enforcement. She argued that all relevant factors favored dismissal in that the accident occurred in Indiana, arguing: (1) all the occupants of Cole's vehicle being Indiana residents, the operative events regarding the Mardi Gras party occurred in Indiana, and the eyewitnesses, investigators, and authorities at the accident scene were all located in Indiana; the defendants might need to implead third-party defendants; and NBS and others might not be subject to the jurisdiction of Kentucky courts; (2) the Estates' choice of Jefferson Circuit Court as a forum should be afforded little weight as according to the accident report, Cole, Fields, Dunn, and T.J. were residents of Indiana and Fields's father is an Indiana resident.

On July 23, 2020, the Estates filed their first amended complaint, naming the additional defendants of Barefoot Consulting, Sazerac IN (which they argued was a wholly owned subsidiary of Sazerac NA), and NBS. Barefoot Consulting and Sazerac of IN were incorporated into the original negligence claims and they and NBS were incorporated into the punitive damages claim. A new dram shop claim was added against NBS and both Sazeracs. The Estates argued that Barefoot Consulting was a Kentucky company; Sazerac of Indiana was a

-7-

Kentucky company with its principal place of business in Louisville, Kentucky, and that although NBS was an Indiana company, it publicly holds itself out as a mobile bartending service which serves Indiana and Kentucky, with the majority of its business taking place primarily in Jefferson County, Kentucky. The Estates argued that Cole and Fields were residents of Jefferson County, Kentucky.

After the circuit court granted the motion to amend, Sazerac NA filed a supplemental brief in support of its motion to dismiss, arguing that the Estates had failed to establish that Cole and Fields were residents of Kentucky, had failed to join the Carriage House as a necessary party, and had not yet established that Kentucky had personal jurisdiction over NBS. It reiterated that Indiana remained a superior forum.

The new defendants, after answering and raising defenses including those based on lack of jurisdiction, failure to join necessary parties, and inconvenient forum, filed motions to dismiss in November 2020. NBS argued that while it "does occasionally contract with Kentucky businesses to provide bartending services in Kentucky, NBS does not have any physical locations in, nor does it conduct business in Kentucky." NBS joined in Barefoot's and Sazerac NA's motions to dismiss and additionally argued that dismissal should be granted because the amended complaint: (1) fails to state a claim as a matter of law because the Estates are void for lack of domicile in Kentucky; (2) should be

dismissed on the basis of *forum non conveniens*; (3) does not establish personal jurisdiction over NBS in Kentucky as (a) it is not subject to general jurisdiction in Kentucky because it does not have "continuous and systematic" contact with Kentucky; and (b) it is not subject to specific jurisdiction in Kentucky under the long-arm statute because the tortious injury did not occur in Kentucky.

Sazerac IN filed two different motions to dismiss, one to dismiss or stay for *forum non conveniens*, and another to dismiss pursuant to Kentucky Rules of Civil Procedure (CR) 12.02. In each motion, Sazerac IN adopted Sazerac NA's arguments and argued that if NBS should be dismissed, its absence would be highly prejudicial to Sazerac IN. Sazerac IN also argued it believed that NBS had hired an independent contractor bartender to work the Mardi Gras event and given the dram shop claims against both Sazeracs and NBS that the independent contractor bartender is also a necessary party.

On December 21, 2020, the opinion and order was entered. The circuit court considered the evidence and arguments in detail in determining whether Kentucky was a *forum non conveniens* based on residency and domicile of Cole and Fields, the availability of an alternative forum, the private interests of the parties and public interests. It concluded that Cole and Fields were Kentucky residents, and that Indiana offered a superior forum under every factor it considered. As to failure to join indispensable parties, the circuit court concluded

that the Carriage House and the bartenders were indispensable parties, and the action could not properly proceed without them.

The circuit court thereupon granted the motions to dismiss for *forum non conveniens* and for failure to join indispensable parties. The circuit court declined to rule upon NBS's motion to dismiss for lack of jurisdiction as moot. In dismissing, the circuit court specifically ruled that "[a]ll claims against all Defendants are dismissed with prejudice."

The Estates timely filed a motion to alter, amend, or vacate. The Estates expressed their concern that the case was "dismissed with prejudice." To ensure there was no issue with refiling in Indiana, as the circuit court had repeatedly stated in the opinion and order that they could do, the Estates asked that the circuit court "amend or clarify its Order changing the language from 'dismissed with prejudice' to 'dismissed without prejudice' to ensure there are no legal issues created upon refiling in Indiana should the Plaintiffs chose to do so."

Barefoot opposed this motion, reasoning it would allow the Estates "to refile their claims in Kentucky in direct conflict with this Court's determination that Indiana is the appropriate forum." Therefore, it requested that any amendment state "'Plaintiffs' Complaint is dismissed with prejudice in Kentucky and this Order shall not preclude Plaintiffs from filing in a different forum in Indiana' to ensure Plaintiffs are precluded from refiling in Kentucky thereafter."

On January 12, 2021, an order on the Estates' motion to alter, amend, or vacate was denied in part, but the circuit court stated it "shall amend the language of the Order to indicate Plaintiffs' Complaint is dismissed with prejudice in Kentucky and this Order shall not preclude Plaintiffs from filing in a different forum in Indiana."

Meanwhile, later in 2021, a separate lawsuit was filed in Jefferson Circuit Court by Leah Onstott Dunn's Estate (which was opened in Indiana) and Aaron Dunn, Leah's husband (the Dunn case), Case No. 21-CI-001414. This case was assigned to a division different from that of the case before us.

In the Dunn case, Sazerac NA and Sazerac IN filed a joint motion to dismiss pursuant to CR 12.02, Sazerac NA filed a motion to dismiss for *forum non conveniens*, and Sazerac NA and Sazerac IN filed a joint motion seeking to transfer the Dunn case to the same division as the case before us, or alternatively stay the Dunn case until resolution of the instant appeal. Following a hearing, the circuit court summarily denied all of these motions.

The parties requested and we granted them oral argument. During oral argument, the Estates noted that in the Dunn case, despite the Dunns' being Indiana citizens, the circuit court denied the motions to dismiss pursuant to CR 12.02 or *forum non conveniens* and the motion to transfer/stay. The Estates requested that we take judicial notice of these orders in the Dunn case, arguing

-11-

what would be truly inconvenient would be to have part of the matter litigated in Kentucky and part in Indiana. A formal motion that we take judicial notice of three orders in the Dunn case was submitted and we granted that motion.

## APPEAL

The Estates argue that the circuit court abused its discretion by: (1) dismissing for *forum non conveniens* where Cole and Fields were Kentucky residents and other factors were in favor of Kentucky's continuing jurisdiction; (2) it was premature to order dismissal for failure to join indispensable parties based on specious assumptions about whether they were necessary and amenable to Kentucky jurisdiction; and (3) any order granting dismissal should have been without prejudice. However, we are stymied from being able to adequately address these issues due to the fact that discovery was prematurely halted in this matter.

### I. *Forum Non Conveniens*

We review dismissal under the doctrine of *forum non conveniens* for abuse of discretion. *Williams v. Frymire*, 377 S.W.3d 579, 589 (Ky.App. 2012). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

-12-

"Under the doctrine of *forum non conveniens*, a stay or a dismissal without prejudice may be appropriate where the chosen forum has jurisdiction and venue, but where another court also having proper jurisdiction and being a proper venue would be a more convenient forum to hear the case." *Stewart v. Kentuckiana Medical Center, LLC*, 604 S.W.3d 264, 270 (Ky.App. 2019). Despite having jurisdiction, Kentucky courts have "not only . . . a right, but also a duty to consider the doctrine and to decline jurisdiction, if appropriate." *Williams v. Williams*, 611 S.W.2d 807, 809 (Ky.App. 1981). This is based on the consideration that trial in another forum would be "more convenient for the litigants and witnesses[.]" *Roos v. Kentucky Educ. Ass'n*, 580 S.W.2d 508, 508 (Ky.App. 1979).

"While, even in the ordinary action, the residence of the suitor will not fix the proper forum without reference to other considerations, it is a fact of 'high significance.'" *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 525, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947) (quoting *International Milling Co. v. Columbia Transportation Co.*, 292 U.S. 511, 520, 54 S.Ct. 797, 799, 78 L.Ed. 1396 (1934)).

> The convenience vel non of a given forum is not
> determined by a fixed set of rules, but is arrived at by a
> consideration of various factors on a case by case basis.

In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) [(superseded by statute)[4]], the Court noted that:

> (i)mportant considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises if view would be appropriate to the action; and all other practical problems that make trial of case easy, expeditious, and inexpensive. *Id.* at page 508, 67 S.Ct. at page 843.

*Roos*, 580 S.W.2d at 508-09.

However, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. at 843. *See Stipp v. St. Charles*, 291 S.W.3d 720, 726 (Ky.App. 2009) (favorably quoting this provision). "[A]bsent compelling or unusual circumstances, a court is duty bound to hear cases within its vested jurisdiction." *Roos*, 580 S.W.2d at 509.

---

[4] As explained in *American Dredging Company v. Miller*, 510 U.S. 443, 449 n.2, 114 S.Ct. 981, 986 n.2, 127 L.Ed.2d 285 (1994), "[s]uch a dismissal [as occurred in *Gulf Oil Corp.*] would be improper today because of the federal venue transfer statute, 28 U.S.C. § 1404(a)[;] . . . [a]s a consequence, the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad." Similarly, in *Dollar General Stores, Ltd. v. Smith*, 237 S.W.3d 162, 167 (Ky. 2007), the Kentucky Supreme Court noted "[w]ith enactment of KRS 452.105, the General Assembly made it clear that venue should be transferred in a proper case, and that the action should not be dismissed" and "[held] that the same rule applies where the trial court determines that another forum [in Kentucky] would be a more convenient place for the litigation."

### A. Whose Home Forum is Paramount?

Although the parties and the circuit court all seem to have assumed that Cole's and Field's domicile is paramount in considering whether Kentucky is the home forum, this is incorrect and overly simplistic. In fact, it is the home forum of McDonough which is paramount. She is not only the party who filed suit but is a real party in interest given that Cole died intestate along with her child, and McDonough as Cole's mother stands to inherit from Cole's estate given our intestacy laws. While Kentucky cases do not clarify this matter, federal cases do.

*Piper Aircraft Company v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), is instructive. In that wrongful death case, a plane crash in Scotland killed the pilot and five passengers. All of the decedents were Scottish subjects and residents, as were their heirs and next of kin. *Id.* at 239, 102 S.Ct. at 257. However, a California probate court appointed Gaynell Reyno, the legal secretary of the attorney who ended up filing a wrongful death action on their behalf, as administratrix of the estates of the five passengers. As the Court observed, "Reyno is not related to and does not know any of the decedents or their survivors." *Id.* In considering the plaintiff's choice of forum as a factor in its inconvenient forum analysis, the district court determined that in this instance the plaintiff's choice of forum was entitled to little weight even though a plaintiff's choice ordinarily deserves substantial deference. The district court

-15-

noted . . . that Reyno "is a representative of foreign citizens and residents seeking a forum in the United States because of the more liberal rules concerning products liability law," and that "the courts have been less solicitous when the plaintiff is not an American citizen or resident, and particularly when the foreign citizens seek to benefit from the more liberal tort rules provided for the protection of citizens and residents of the United States."

*Id.* at 242, 102 S.Ct. at 259 (quoting *Reyno v. Piper Aircraft Co.*, 479 F. Supp. 727, 731 (M.D. Pa. 1979)). In the district court case, the court specifically emphasized the fact that the case "does not involve Americans as real parties in interest." *Reyno*, 479 F. Supp. at 731.

In considering the district court's decision as to home forum, the Supreme Court agreed with its holding that the presumption that a plaintiff's choice of forum is entitled to substantial deference "applies with less force when the plaintiff or real parties in interest are foreign" and determined that its "distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified." *Piper Aircraft Co.*, 454 U.S. at 255, 102 S.Ct. at 266. The Supreme Court further explained:

When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

-16-

*Id.* at 255-56, 102 S.Ct. at 266 (footnote omitted). In doing so, the Supreme Court accepted the premise that because the real parties in interest were foreign, that the fact that an American citizen was appointed to be the estates' representative was not entitled to much weight, simplifying the matter of citizenship to make its general point.

However, the converse is also true. When the representative is a real party in interest, that representative's choice of her home forum is entitled to substantial deference. *See Nandjou v. Marriott International, Inc.*, 985 F.3d 135, 141-42 (1st Cir. 2021) (recognizing that the wife and mother of the decedents who served as the representative for their estates, was entitled to great deference when pursuing suit in what was her home forum district in Massachusetts at the time of the decedent's deaths even though the deaths occurred in Canada); *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1267, 1269 (11th Cir. 2009) (recognizing the importance to be given to the home forum of Florida which was the residence of the decedent, where the decedent's estate was being probated, is the residence of the decedent's sister and cousins who witnessed the accident and the residence of the plaintiff who represented the estate and was the decedent's daughter, noting "[a] plaintiff's choice of forum is entitled to deference, and there is a presumption in favor of a plaintiff's choice of forum, particularly where the plaintiffs are citizens of the United States.").

The record below indicates that no one questioned that McDonough is domiciled in Kentucky. Therefore, her choice of her home forum to litigate this matter is entitled to substantial deference. That does not mean that Cole's and Fields's home domiciles are irrelevant to the overall analysis, but that they simply have less weight than McDonough's domicile.

### B. Where Were Cole's and Field's Domicile?

As to the factor of whether Indiana or Kentucky was Cole's and Fields's home forum, there is ample law on how domicile is determined. "A person may have many residences, but can have but one domicile[.]" *Wheeler v. Burgess*, 263 Ky. 693, 93 S.W.2d 351, 353 (1936). "A domicile once acquired continues until a new one is acquired. The burden of showing the acquisition of a new domicile is on the one asserting it. Two things must concur to establish a new domicile, actual physical residence at the new location and the intention of remaining there." *Id.* at 354.

As for Fields's domicile, it is well established that a minor's domicile may be changed by the person having legal custody. *Boyd's Ex'r v. Commonwealth*, 149 Ky. 764, 149 S.W. 1022, 1023 (1912). Therefore, as Cole had primary physical custody of Fields, her domicile is his.

"[W]hen one acquires a domicile, it cannot be changed without the acquisition of another domicile, which, as seen, must be done by acts, conduct, and

-18-

intention." *Semple v. Commonwealth*, 181 Ky. 675, 205 S.W. 789, 791 (1918). "[T]here must be an intention to abandon the old domicile and not to return to it and an intention to acquire a new residence as a permanent home; the intention being coupled with a corresponding act evidencing those purposes." *Appleton v. Southern Tr. Co.*, 244 Ky. 453, 51 S.W.2d 447, 449 (1932). "The intention to stay, to make the new establishment their home for good, is what makes it their domicile." *Wheeler*, 93 S.W.2d at 353. Therefore, an existing domicile is not changed by a prolonged, indefinite stay elsewhere, when coupled with definite intent to return to the existing domicile. *Id.*

Intention is the dominant factor. *Ellison v. Smoot's Adm'r*, 286 Ky. 768, 151 S.W.2d 1017, 1020-21 (1941); *City of Ashland v. City of Catlettsburg*, 172 Ky. 364, 189 S.W. 454, 454-55 (1916). However, "[e]xpressions of intent are not alone sufficient; there must be some evidence supporting these declarations of intent." *Boyd's Ex'r*, 149 S.W. at 1023.

As discussed in *Wheeler*, in the case of *Baker v. Baker, Eccles and Company*, 162 Ky. 683, 173 S.W. 109, 119 (1915), which was affirmed by the United States Supreme Court in 242 U.S. 394, 37 S.Ct. 152, 61 L.Ed. 386 (1917), our highest Court found it to be extremely significant in determining Baker's domicile, that not only did Baker move to Paducah and conduct business there

-19-

until his death but he registered to vote there, and did not vote in Tennessee after his removal to Kentucky, with the Court in *Wheeler* noting:

> Each vote he cast and each of his registrations as a voter was a most solemn declaration, he possessed all those qualifications set out in section 145 of the Kentucky Constitution, and that he was not domiciled elsewhere.  If Baker were domiciled in Tennessee, then each time he voted in Kentucky he committed a felony punishable by one to five years' confinement in the penitentiary.

*Wheeler*, 93 S.W.2d at 355.

Regarding Cole's and Fields's residence being in Kentucky or Indiana, the circuit court cited appropriate law and determined that Cole's intentions could be deduced by her actions that showed she intended to remain an Indiana resident.  The Court emphasized that Cole had an Indiana driver's license, was required to change her license to Kentucky within thirty days after moving to Kentucky and chose not to do so, which was evidence of her intent to maintain a domicile in Indiana.  The circuit court also heavily relied on the fact that Cole:

> [M]aintained her voter residence in Indiana.  Further, she went so far as to **update her voter registration in December of 2019**, to reflect that she would vote in Crawford County, Indiana.  In order to maintain the registration, she had to swear that she would remain in the Indiana precinct for at least 30 days prior to the next election in May of 2020.

The circuit court noted that all public records supported Cole's having an intent "to reside in Indiana.  And she is the one who caused by her actions the creation of

-20-

those records." The circuit court also noted that Cole attended church in Indiana, her visitation and funeral took place in Indiana, and she and Fields were buried in Indiana. While the circuit court acknowledged the contrary evidence and opined that Cole "appeared to desire to move to Kentucky," it resolved that she was domiciled in Indiana.

On appeal, the Estates argue that Cole's residence was of paramount importance in the circuit court's decision to dismiss for *forum non conveniens*, and the circuit court's decision that Cole was an Indiana resident was clearly erroneous. The Estates argue that it is more appropriate to discern Cole's intent as to her domicile based upon her actions regarding living in Kentucky as shown through the affidavits of McDonough, Andrew Wilson, and the father of Fields. They argue that Cole moved to Kentucky with the plan of raising her new child with Wilson and her actions regarding failing to change her driver's license and voter registration were explained by Cole's not wishing to have to change her residential address multiple times before she was finally settled in independent housing with Wilson. The Estates point to Cole's having grown up in Kentucky; having lived in both Kentucky and Indiana; and having returned to Kentucky – combined with her action of looking for a new job and daycare for Fields in Louisville; moving in with Wilson and his parents in Kentucky and then her mother and stepfather in

Louisville; planning to live with Wilson in Louisville; and storing her belongings in Kentucky.

The Estates object that the circuit court put far too much weight on Cole's retention of her Indiana driver's license and voting registration. They point out that in the affidavits, Cole's mother explained what Cole told her about why she had not yet changed her license and Cole made statements about her intent to remain in Kentucky and raise her new baby with Wilson. They emphasize that Wilson stated he was unwilling to relocate to Indiana and that he and Cole agreed that Louisville would present the best opportunities for their family. They note that Cole's conduct was consistent with her statements of intent as she remained living in Kentucky after she moved until she passed away. The Estates also argue it was inappropriate for the circuit court to consider where Cole's and Fields's services and burials took place because Cole had not provided any direction as to where this should occur in the event of her death.

We acknowledge that there was evidence from which the circuit court could determine that Cole's (and thereby Fields's) domicile had changed from Indiana to Kentucky, but there was also contrary evidence. We note that even the Estates' evidence was that Cole had switched her residences in Kentucky, first residing with Wilson and his parents, then residing with her mother and stepfather, had plans to reside with Wilson separately but did not yet have a separate residence

with him, had not yet acquired employment in Kentucky and had not yet obtained

childcare in Kentucky. There was certainly evidence to support the circuit court's

decision that while Cole apparently did not have a residence to return to in Indiana,

she had maintained her legal affiliations there and had not yet changed her

domicile to Louisville, Kentucky, and had not acquired a permanent residence

there. *See Wheeler*, 93 S.W.2d at 353; *Appleton*, 51 S.W.2d at 449.

However, it was improper for the circuit court to consider the location

of Cole's and Fields's funeral and burial as evidence of Cole's intention to remain

an Indiana citizen, given that she left no directions as to her burial. We are

uncertain of how much this consideration swayed the circuit court's ultimate

decision on their domicile. Given how close this issue was, we believe the circuit

court should have allowed the parties to gather and present additional information

on this issue. Therefore, we vacate the circuit court's ruling as to the domicile of

Cole and Fields.

We additionally observe that whatever the circuit court's ultimate

decision on the issue of Cole's and Field's domicile, given how close this issue is

and given Cole's strong connections to both Indiana and Kentucky, in a relatively

small area near the adjoining borders of both states, we do not believe the issue of

the decedents' domicile is entitled to as much weight given that Kentucky is

McDonough's domicile and the probate actions were opened in Kentucky.[5] While the circuit court indicated that its ruling on the decedents' domicile was not controlling as to its ultimate conclusion that Kentucky was an inconvenient forum,[6] we believe this portion of its analysis was important enough that this alone would warrant vacating its decision.

### C. Additional Factors in Determining *Forum Non Conveniens*

Regarding its overall analysis of *forum non conveniens*, the circuit court concluded Indiana offered a superior forum after considering the *Gulf Oil* factors. The circuit court noted that Indiana was an appropriate alternative forum based on the party and collision having occurred there, and Indiana having jurisdiction over all of the defendants and potential defendants.

The circuit court weighed the private interests of the parties and concluded Indiana was a superior forum based on: (1) the relevant ease of access to sources of proof, including physical proof and the availability of personal jurisdiction in Indiana over The Carriage House and independent contractor

---

[5] Our decision that the circuit court could ultimately determine that Cole was domiciled in Indiana should not be viewed as controlling as to whether the probate action was properly filed in Louisville. We are confident that McDonough filed there in good faith and there was an adequate basis for opening the estates there.

[6] The circuit court concluded its analysis on the *forum non conveniens* by stating that "[e]ven if this Court had personal jurisdiction over all existing defendants and indispensable parties, which it does not, and even if Cole and Fields were Kentucky residents, which they were not, Indiana offers a superior forum."

bartenders, noting "the majority of the relevant evidence is located in Indiana, and this factor weighs heavily in favor of Indiana being a superior forum"; (2) the availability of subpoena power over Indiana witnesses in Indiana; (3) the possibility of viewing the scene in Indiana; and (4) the practical problem that Leah Onstott Dunn's case might take place in Indiana and the practical expenses of defending in Kentucky and compelling Indiana witnesses to appear in Kentucky courts when there were relatively few Kentucky witnesses. As to this final factor, the circuit court emphasized that:

> If Onstott's case is brought in Indiana, the four defendants currently in this case, along with The Carriage House, could be subject to defending the case in both Kentucky and Indiana. This would result in extra expense to the defendants and would not be considered an expeditious manner to handle the cases.

In considering the public interest, the circuit court determined this also weighed in favor of Indiana because the tort and crime occurred within Indiana's borders. The circuit court again emphasized:

> Onstott's case will likely proceed in Indiana, as she is not a Kentucky resident, and the relevant factors weigh heavily in adjudicating her case in Indiana. To have the defendants defend this case in two separate jurisdictions at the same time would be costly to the defendants and could result in inconsistent verdicts.

The circuit court also noted it was appropriate to have Indiana adjudicate and interpret its own dram shop law.

The Estates argue that although specific evidence is located in Indiana, it is available in Kentucky through the Uniform Interstate Depositions and Discovery Act (UIDDA), Kentucky Revised Statutes (KRS) 421.360. They argue that Kentucky courts have retained control of cases where automobile accidents have occurred in other states, even when there were fewer contacts with Kentucky than in the case before us. They also argue the witnesses that the Estates desire to call are all either Kentucky residents or employed by one of the Sazerac companies and could be called by them. The Estates argue that the corporate defendants are properly before Kentucky courts based upon their connections to Kentucky, whether they are Kentucky corporations or not. Finally, the Estates argue that it is appropriate for Kentucky courts to apply Kentucky law when at all possible, and if made to litigate in Indiana, the Estates will be limited in the amounts they may recover under Indiana law, which would violate the Kentucky Constitutional prohibition against placing a cap on the recovery, explaining this provides a public policy reason why Kentucky should maintain jurisdiction and apply its own law.

We also consider additional arguments the Estates made in their brief in the section devoted to the grant of dismissal for failure to join indispensable parties, as we believe those arguments equally apply to the analysis of whether Kentucky was an inconvenient forum. The Estates argue that the circuit court erred in finding that the Estates' case should be dismissed for failure to join

necessary parties when they were prohibited from obtaining discovery determining the residence of the bartenders and it is not clear the Carriage House is a necessary party. They argue it was inappropriate for the circuit court to conclude that the bartenders were likely Indiana residents when there was no evidence (and only argument) to support this conclusion.

Finally, we consider that during oral argument, on the basis of subsequent developments in the Dunn case, which was that the case would not be dismissed, the Estates also argued that what would be truly inconvenient would be for these cases to be litigated in two different states. We believe this point is paramount, given the emphasis the circuit court gave to this factor.

We agree with the Estates that the circuit court appears to have failed to adequately consider all the connections this case has with Kentucky and the means by which relevant evidence could still be admitted. We agree that evidence can be obtained from out-of-state witnesses through UIDDA, which limits the importance of the factor relating to the lack of Kentucky's subpoena power over Indiana witnesses. Additionally, we do not discount that possibly out-of-state witnesses would consent to voluntarily travel to give testimony, testify by video deposition, or testify virtually over an internet platform such as Zoom, Facetime, or Microsoft Teams, or via telephone.

There are certainly some factors which may favor a decision being made in Indiana, such as that the alleged overserving of Barefoot and motor vehicle accident both occurred in Indiana, that witnesses to these events reside in Indiana, and compulsory process to bring them into court is available in Indiana. We also agree that there is a public interest in addressing the consequences of these Indiana crimes in Indiana before an Indiana jury.

However, there are also factors that favor the continuation of this action in Kentucky, such as the majority of the parties' being Kentucky residents or businesses. Given that Barefoot has pled guilty to her criminal charges, the evidence regarding the motor vehicle accident itself is less relevant than it would have otherwise been. Her conviction also lessens the importance of obtaining witnesses as to the accident itself. Therefore, the situs of the accident and any need to view that scene would be lessened.

As to the issue of the substantive law being less favorable to the Estates in Indiana, as explained in *Piper Aircraft Company*, 454 U.S. at 247, 102 S.Ct. at 261, "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." However, that does not mean that it should not be given any weight at all, as the Supreme Court observed: "We do not hold that the possibility of an unfavorable change in law should *never* be a relevant consideration in a *forum non*

*conveniens* inquiry." *Id.* at 254, 102 S.Ct. at 265 (footnote omitted). We do believe that in a close case, the limitation of the potential damage award does merit consideration along with other factors.

But of greater importance to our analysis as to whether the circuit court's decision was an abuse of discretion is that the circuit court prematurely determined the bartenders were likely Indiana citizens and made an assumption as to what would occur in Dunn's case which was ultimately proven to be incorrect. This makes the circuit court's ultimate conclusion regarding *forum non conveniens* suspect.

With the available evidence, it is completely unknown whether there was personal jurisdiction over the bartenders. The appellees made bare statements in support of their motions to dismiss which assumed that the bartenders were Indiana residents. However, such an assumption was unwarranted. NBS failed to identify which bartenders were serving that evening or their residences prior to discovery being halted, and the circuit court lacked any knowledge of whether they were Indiana or Kentucky citizens. An issue was at least raised by the Estates that these bartenders could have been Kentucky citizens as the Estates alleged that NBS conducted the majority of its bartending events in Kentucky and provided evidence below to support such contention. In the absence of evidence as to the citizenship

of the bartenders, it should have been assumed that the bartenders could be Kentucky residents as it was up to NBS to prove otherwise.

As was discussed during oral argument, the Dunn case was filed in Jefferson County, Kentucky, ending up before another division of the Jefferson Circuit Court. When the defendants sought dismissal in the Dunn case, the circuit court in that division denied the motions to dismiss based on an inconvenient forum and failure to join indispensable parties. The Dunn case continues to proceed before the circuit court.

While it is still possible that the Dunn case could be dismissed in the future, should another motion be submitted once further discovery has been completed, at this juncture affirming the circuit court's order of dismissal would result in overlapping cases being litigated in two different forums and we agree that would be very inconvenient for all concerned, especially the appellees. *See Piper Aircraft Co.*, 454 U.S. at 259, 102 S.Ct. at 268 (observing that it is "far more convenient . . . to resolve all claims in one trial.") This is a very significant factor.

We believe vacating the circuit court's decision on *forum non conveniens* is appropriate. The circuit court needs to consider the relevant factors again once further discovery has taken place.

It may ultimately be appropriate to consolidate this case with the Dunn case in either division,[7] so that, hopefully, inconvenience to all the parties is lessened and the cases remain pending together before the same judge and forum. As explained in Kentucky Rules of Civil Procedure (CR) 42.01: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." *See Massie v. Salmon*, 277 S.W.2d 49, 51 (Ky. 1955) (discussing that while consolidation is a matter for the discretion of the trial court, if the common questions of law or fact principally involve the issue of negligence, they "should properly be tried together to advance the convenience of the court and the parties and to avoid unnecessary expense or delay"). While the Dunn case is not before our Court, and we could not order consolidation in any event as that is a matter within the trial court's discretion, we believe it is appropriate to order that the division of the circuit court before us consult with the other division of the circuit court as to whether these

---

[7] While the Estates' case was filed first, the Dunn case may have proceeded further as it has continued while the Estates' case pended before us on appeal. So, it would not necessarily be better for the Dunn case to be consolidated with the Estates' case in the division in which it is currently pending, rather than the other way around.

cases should be consolidated before either judge.[8]  Therefore, we order that such

consultation take place.

## II.    Failure to Join Indispensable Parties

As to dismissal for failure to join indispensable parties, this is also

premature.  We cannot properly evaluate this ruling on its merits given the lack of

development of the record.  Simply put, we do not know at this juncture whether

these parties are truly indispensable and not amenable to suit in Kentucky.

The circuit court concluded dismissal was appropriate for failure to

join indispensable parties, explaining:  (1) while NBS and Sazerac IN are now

joined, NBS has filed a motion to dismiss for lack of personal jurisdiction, but

would have no basis to dispute jurisdiction in Indiana; (2) Kentucky courts did not

appear to have jurisdiction over the unnamed bartenders who were thought to be

Indiana residents and they would be indispensable parties to the dram shop action;

(3) Kentucky courts did not appear to have jurisdiction over the Carriage House,

which was the venue in the dram shop case and "its acts or omission, along with

---

[8] When consolidation was requested before, the appellees sought to consolidate the Dunn case with this case before the division of the circuit court which had already granted dismissal of this case, which arguably had a stronger basis for being heard before Kentucky courts than the Dunn case.  Under those circumstances, knowing how the judge had ruled in this case, granting consolidation logically was likely to result in the dismissal of the Dunn case (although of course both dismissals were subject to appeal).  While the judge in the other division previously declined to consolidate the Dunn case with this case, we do not know whether the judges ever discussed the matter and whether consolidation might be more appropriate and palatable at this juncture now that discovery will continue.

contract terms with the other defendants, is likely very relevant to their issue of liability[;]" and (4) all four factors favor dismissal as: (a) failure to add the venue and bartenders is highly prejudicial to the other defendants "as a judgment may be inconsistent with actual liability[;]" (b) there are no protective provisions which would result in less prejudice; (c) a judgment rendered without the Carriage House cannot be adequate; and (d) an adequate alternative remedy is to refile the action in Indiana.

As we noted in our prior discussion, the Estates argued it could not be established that the bartenders were Indiana residents and not amenable to suit in Kentucky in the absence of any evidence about who they were. They also argued that it was unclear that the Carriage House needed to be made a party.

The Estates argue that pursuant to CR 19.01, if an indispensable party has not been joined then the court "shall order that he be made a party." Therefore, they argue that the circuit court should have allowed the Estates to conduct their requested discovery and amend their complaints to include the bartenders and the Carriage House if appropriate. They also argue that the circuit court applied an improper standard by considering facts and evidence outside of the pleadings as to the citizenship of the bartenders that was evidently believed in the absence of any proof and this alone merits reversal.

We agree that it was inappropriate for the circuit court to conclude that the bartenders were Indiana citizens and not amenable to suit in Kentucky. At this juncture, without more discovery, it is simply impossible to conclude that the unnamed bartenders are indispensable parties that are not amenable to suit in Kentucky, or to even know if the Carriage House must be joined.

We additionally agree that dismissal for failure to name indispensable parties is not appropriate. As explained in *Cabinet for Human Resources v. Kentucky State Personnel Board*, 846 S.W.2d 711, 714 (Ky.App. 1992): "When one litigant believes there to be an indispensable party it should request the court to order joinder by the simple expedient of filing a motion. If the court concurs then service of process shall issue[.]" The rules do not allow the parties and court to fail to try to join indispensable parties on the basis that they cannot be sued in our courts. Therefore, if these unnamed bartenders and the Carriage House are ultimately ruled to be indispensable parties, it would be appropriate to order them joined and then let them argue that the Kentucky courts do not have jurisdiction over them, rather than assuming that to be the case. Therefore, we vacate the decision granting dismissal on the basis that indispensable parties were not joined and remand for additional discovery.

## III.  Dismissal with Prejudice

Finally, the Estates argue that it was inappropriate for the case to be dismissed with prejudice where its merits were never reached, and this could prevent them from bringing their claims in Indiana.  While our vacation of the previous rulings renders any discussion of this matter moot at this time, we briefly address this issue so as to provide guidance should the circuit court ultimately dismiss this action again.

We believe this argument is well taken as the appropriate remedy if the forum is inconvenient is to stay the action or dismiss without prejudice as specified in *Stewart*, 604 S.W.3d at 270.  *See Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 501 (6th Cir. 2016) (explaining "[i]t is well established that the appropriate disposition of a granted forum non conveniens motion is dismissal without prejudice to filing in the alternative forum").  *See also Prevent USA Corporation v. Volkswagen AG*, 17 F.4th 653, 659 (6th Cir. 2021) (noting a dismissal without prejudice for *forum non conveniens* has no *res judicata* effect and "may be refiled in federal court if the alternative forum itself declines to exercise jurisdiction").

## CONCLUSION

Accordingly, we vacate the Jefferson Circuit Court's decision to dismiss for *forum non conveniens* and for failure to join indispensable parties.  On

remand, the circuit court will order discovery to be recommenced and will consult with the other division of the circuit court which has the Dunn case before it.  Once ample discovery is completed to clarify these issues, the appellees may refile their motions.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Mark Gabriel Hall
Gary Richard Adams, Jr.
Darren C. Wolff
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Mark Gabriel Hall
Louisville, Kentucky

BRIEF FOR APPELLEE TAYLOR
BAREFOOT:

Gregg Edward Thorton
Betsy R. Catron
Lexington, Kentucky

BRIEF FOR APPELLEE NAKED BY
SUNDAY, LLC:

Van Thomas Willis
Crystal Gates Rowe
New Albany, Indiana

BRIEF FOR APPELLEES SAZERAC
NORTH AMERICA, INC. AND
SAZERAC OF INDIANA, LLC:

Jill Fran Endicott
Anne Katherine Guillory
Louisville, Kentucky

ORAL ARGUMENT FOR
SAZERAC:

Jeremy Rogers

ORAL ARGUMENT FOR
APPELLEE NAKED BY SUNDAY,
LLC:

Crystal Gates Rowe
New Albany, Indiana