Samuel Scott HUNTER, Appellant,

v.

Candice L. MENA, Appellee.

No. 2009–CA–000494–ME.

Court of Appeals of Kentucky.

Jan. 8, 2010.

Joseph E. Blandford, Jr., Louisville, KY, for appellant.

No brief for appellee.

Before ACREE, KELLER and LAMBERT, Judges.

## OPINION

ACREE, Judge.

Samuel Scott Hunter appeals a Domestic Violence Order (DVO) originally entered January 22, 2009,[1] and amended February 19, by the Jefferson Family Court. The final version of the order prohibits Samuel from having any contact with his former girlfriend, Candice L. Mena, or his nephew, Christopher Hunter,

1. All dates refer to the calendar year 2009 unless otherwise noted.

a minor. It also restrains Samuel from committing further acts or threats of abuse, damaging or disposing of Candice's property, possessing a firearm, or coming within 1000 feet of her. We affirm except to the extent the order prohibits Samuel from contact with Christopher.

Candice lived with Samuel at his home in Louisville, Kentucky, for about eighteen months. Nothing in the record indicates where she resided prior to that. Also living with the couple were Samuel's minor children and his nephew, Christopher.

On or about January 9, Samuel discovered Christopher and Candice were involved in a romantic relationship. At Samuel's suggestion, Candice and Christopher left Samuel's home to stay with Christopher's mother, Samuel's sister. The next day, Samuel tried to convince Candice to return but she refused. According to Candice's domestic violence petition, Samuel then stole her purse, had his niece physically attack her, and committed other acts of harassment. After Samuel left Christopher's mother's house, Christopher contacted police officers who were investigating an unrelated incident nearby. The police officers arranged for Candice to move to a local shelter. Samuel then pursued Candice at the shelter. Reacting to Samuel's continued pursuit, Candice telephoned her mother, who resides in Indiana, seeking her help. Candice's mother came to Kentucky, picked up her daughter, and returned to her Indiana home.

On January 13, Candice filed a petition with the Jefferson Family Court seeking an Emergency Protective Order (EPO). The petition was granted and the family court entered the EPO pursuant to Kentucky Revised Statute[s] (KRS) 403.740. After a hearing on January 22, the family court issued a DVO, and following a re-hearing on February 19, issued an amended DVO. This appeal followed.

Samuel asserts three reasons for reversing the amended DVO: (1) it improperly prohibited Samuel from contact with Christopher, a non-party; (2) the family court lacked subject matter jurisdiction to issue a DVO because Candice was not a Kentucky resident at the time of her petition; and (3) the evidence contradicted the family court's finding that Samuel committed acts of domestic violence against Candice. We address each assertion seriatim.

At all times relevant to this matter, Christopher was a minor. He accompanied Candice and her mother when Candice filed her petition on January 13. Candice's mother, on Christopher's behalf, filed a separate petition as his next friend seeking an EPO against Samuel. The EPO was entered and, at the previously mentioned January 22 hearing, the family court entered a DVO in favor of Christopher as well.

■ At the February 19 hearing, the family court correctly rescinded the DVO directly affecting Christopher because Candice's mother did not reside in Kentucky and, therefore, did not qualify as his "next friend." KRS 387.300(1)("No person shall sue as next friend unless he reside in this state[.]"). However, the family court, obviously believing Christopher still feared physical harm from Samuel, included a requirement in the DVO entered pursuant to Candice's petition that Samuel have no contact with Christopher. We believe doing so was error.

Christopher is a member of Samuel's family as defined by KRS 403.720(2) and, therefore, would be subject to the protection of the domestic violence statutes. However, he was a minor and could not file a petition on his own behalf.

On the other hand, KRS 403.725(3) states in pertinent part that a petition "may be filed by the ... member of an unmarried couple *on behalf of* a minor family member." KRS 403.725(3)(emphasis supplied). Candice was a member of an unmarried couple (*i.e.*, Candice and Samuel), and Christopher was Samuel's minor family member.[2] Therefore, she could have filed a petition on behalf of Christopher. But Candice's petition clearly was not filed on Christopher's behalf; Candice filed the petition on her own behalf. Therefore, Candice's petition could not justify entry of an order protecting Christopher.[3] That portion of the DVO prohibiting Samuel's contact with Christopher must be stricken from the DVO.

We now turn to the argument that the family court lacked subject matter jurisdiction to issue a DVO in favor of Candice because she was not a Kentucky resident at the time of her petition. Samuel neither raised the matter below, nor properly cited the portions of the record which support this argument. Ordinarily, that would limit our review to a consideration of whether the alleged error resulted in manifest injustice. *Pittsburg & Midway Coal Mining Co. v. Rushing*, 456 S.W.2d 816, 818 (Ky.1969). That rule does not apply, however, when the error urged on appeal is that the family court lacked subject matter jurisdiction. *Gullett v. Gullett*, 992 S.W.2d 866, 868–69 (Ky.App. 1999)("The question of subject matter jurisdiction may be raised at any time and is open for the consideration of the reviewing court whenever it is raised by any party."). Therefore, our consideration of this error is undertaken without regard to Samuel's failure to raise it previously.

KRS 403.725 permits any person "who is a resident of this state or has fled to this state to escape domestic violence" to file a verified petition for a protective order. Samuel argues Candice does not fit in either category.

First, it is indisputable, and Samuel does not dispute, that during the eighteen months she cohabited with Samuel, Candice was a Kentucky resident. Therefore, it is obvious that Candice had not just "fled to this state" when she filed her petition on January 13, 2009. The question then is whether Candice remained a Kentucky resident on that date.

In effect, Samuel argues that the moment Candice left Kentucky for her mother's home in Indiana, she lost her legal status as a Kentucky resident. We disagree.

Samuel confuses legal residence, or domicile, with actual residence. But, "one may have a legal residence or legal domicile in one state and an actual residence in another." *Lanham v. Lanham*, 300 Ky. 237, 188 S.W.2d 439, 440 (1945). Because a change in actual residence requires nothing more than the physical act of relocating, Candice's *actual* residence became her mother's Indiana home, at least for a time. *See Russell v. Hill*, 256 S.W.2d 508, 509 (Ky.1953).

On the other hand, a change in *legal* residence or domicile requires a physical act coupled with the intent to abandon the domicile previously established. *Perry v. Motorists Mut. Ins. Co.*, 860 S.W.2d 762, 765 (Ky.1993)("Legal resi-

---

**2.** We do not believe the legislature had this scenario in mind when it enacted KRS 403.725(3) but more likely envisioned the protection of the child of a domestic violence perpetrator by the perpetrator's partner who was not related to the child.

**3.** According to the record, Christopher turned 18 years of age in June 2009.

dency is based on fact and intention."). Therefore, our review focuses on the evidence in the record, if any exists, that would support an inference that, before filing her petition, Candice intended to abandon her status as a Kentucky resident.

■ We note that "the burden of establishing a change of domicile is upon the one asserting it." *Hite's Adm'r v. Hite's Ex'r*, 265 Ky. 786, 97 S.W.2d 811, 813 (1936). Samuel presented no evidence below that Candice intended to abandon Kentucky as her legal residence in the few days between going home with her mother and the day she filed her petition. In fact, the only reasonable inference to be drawn from the record is that Candice made every effort to maintain her residency in Kentucky.

It is undisputed that Candice established her residency in Kentucky during the eighteen months she lived with Samuel. When she left his home, she moved to another Kentucky location, Christopher's mother's apartment. When Samuel's continued interaction with Candice made staying with Christopher's mother impractical, Candice moved to a third Kentucky location, a shelter. It was only after Samuel contacted Candice at the shelter that, having exhausted her options for a physical residence in Kentucky, she called her mother in Indiana. We view this evidence as indicating a strong desire on Candice's part to remain a resident of this state despite the fact that Samuel's pursuit drove her from it.

Samuel offers nothing upon which to base an inference that Candice was forever abandoning Kentucky as her domicile. To slightly paraphrase a recent opinion of this Court, "there was absolutely no evidence that it was [Candice's] intent to establish permanent residency in [Indiana] and abandon her Kentucky domicile." *Fehr v.*

*Fehr*, 284 S.W.3d 149, 152 (Ky.App.2008). Absent that intent, Candice's "temporary residence out of the state, even for an indefinite period, will not constitute the party a nonresident[.]" *Appleton v. Southern Trust Co.*, 244 Ky. 453, 51 S.W.2d 447, 449 (1932).

Therefore, we conclude that Samuel's second argument fails; the family court did not lack subject matter jurisdiction in this case.

■ Samuel's final argument is that the evidence contradicted the family court's determination that he committed acts of domestic violence against Candice. Again, we disagree.

■ Although Samuel does not use the operative language, "clearly erroneous," in his brief, we are required to review a family court's findings of fact by that standard. Kentucky Rules of Civil Procedure (CR) 52.01; *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky.App.2008). A finding supported by substantial evidence is not clearly erroneous. *Black Motor Co. v. Greene*, 385 S.W.2d 954, 956 (Ky.1965). Substantial evidence is "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Natural Resources and Environmental Protection Cabinet*, 891 S.W.2d 406, 409 (Ky.App.1994). In assessing whether the findings of fact are supported by substantial evidence, we will not substitute our judgment for that of the family court. *Bickel v. Bickel*, 95 S.W.3d 925, 928 (Ky.App.2002).

The only evidence presented to the family court upon which the DVO was based was the conflicting testimony of the parties and their respective witnesses. That evidence rationally permitted more than one conclusion. In other words, the evidence was legally sufficient to have supported

the family court's decision either to grant or to deny the petition.

Candice, as the alleged victim before the family court, presented credible eyewitness testimony to facts that supported the allegations in her petition for the DVO. These included her statements that Samuel had struck her in the past and threatened her with imminent physical harm. Her testimony was supported by Christopher's testimony. Credible eyewitness testimony is substantial evidence. *See Higgs v. Commonwealth,* 255 Ky. 547, 75 S.W.2d 21, 24 (1934) (eyewitness testimony alone is substantial evidence to allow the fact-finder to decide the case; issues of credibility being the purview of the fact-finder). Even presuming, for the same reasons, that Samuel's testimony was also substantial evidence, we cannot ignore the rule of law that "when the testimony is conflicting we may not substitute our decision for the judgment of the trial court." *R.C.R. v. Commonwealth Cabinet for Human Resources,* 988 S.W.2d 36, 39 (Ky. App.1998), citing *Wells v. Wells,* 412 S.W.2d 568, 571 (Ky.1967).

Deciding which witness to believe is within the sound discretion of the family court as fact-finder; we will not second-guess the family court, which had the op- portunity to observe the parties and assess their credibility. CR 52.01. Samuel's argument before us, "[s]tated simply, . . . ignored [his] obligation to show that the [DVO] was not based on substantial evidence and instead endeavored to prove to this Court that [he] had the 'better' case." *Bayless v. Boyer,* 180 S.W.3d 439, 452 (Ky.2005).

The family court was the proper arbiter to decide who had the better case, not this appellate court. The family court's factual determination was based upon substantial evidence and we will not disturb it.

For the foregoing reasons, we reverse the Jefferson Family Court's entry of the Domestic Violence Order in this case but only to the extent it prohibits contact between Samuel and Christopher, affirm the DVO in all other respects, and remand this case for further proceedings consistent with this opinion.

ALL CONCUR.