RENDERED: MARCH 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1797-MR

JOHN DAVID GRAVES                                      APPELLANT

APPEAL FROM MONROE CIRCUIT COURT
v.        HONORABLE DAVID L. WILLIAMS, JUDGE
ACTION NO. 19-CR-00063

COMMONWEALTH OF KENTUCKY                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, LAMBERT, AND K. THOMPSON, JUDGES.

LAMBERT, JUDGE: John David Graves has appealed from the November 18,

2019, judgment and sentence entered by the Monroe Circuit Court following the

entry of his guilty plea conditioned upon his right to seek review of the circuit

court's ruling on his motion to exclude evidence. We affirm.

In April 2019, a Monroe County grand jury indicted Graves on several

drug-related charges, including first-degree trafficking in a controlled substance,

first offense (methamphetamine); first-degree trafficking in a controlled substance, second offense (cocaine); and possession of drug paraphernalia. He was also indicted on two first-degree persistent felony offender (PFO I) charges. These charges arose on March 11, 2019, when several police and probation and parole officers performed a home visit at Graves' residence in Tompkinsville, Kentucky. After receiving consent to search, the officers located substances identified through field testing as cocaine and methamphetamine. Graves was arrested and taken into custody. He hired private counsel to represent him and entered a not guilty plea at his arraignment.

Prior to the scheduled trial, Graves filed a motion in limine to exclude the drug evidence seized from Graves' residence during the search. Discovery provided by the Commonwealth included a Kentucky State Police (KSP) lab report reflecting that the substances were analyzed by a chemist on June 11, 2019, and a request from Officer Jordan Page requesting this analysis dated March 10, 2019, prior to the seizure date. Therefore, he argued that there was a lack of proof of a chain of custody that these were the substances seized from the residence.

The court held a hearing on October 24, 2019, on Graves' motion. Counsel for Graves addressed the alleged issues with the chain of custody related to dates on two forms. The Tompkinsville Police Department Request for Evidence Examination form listed an offense date of January 11, 2019, and a

signature date of March 10, 2019. Both of these dates predated the actual March 11, 2019, arrest and seizure date. Another document from the KSP lab listing the chain of custody dates indicates that the items were received from Assistant Chief Kerry Denton on May 21, 2019, months after the evidence was seized.

Officer Page was the first witness to testify for the Commonwealth. He is a sergeant with the Tompkinsville Police and was the arresting officer in this case. Officers, including Officer Page, had received complaints of drugs related to Graves, and he and other officers organized a home visit. He seized all of the suspected drugs and related items found during the search and filed a report dated March 11, 2019, detailing the investigation that day. After he arrested Graves, he put the evidence in his patrol car and took it back to the police department where he filled out the citations and started the forms. He placed the evidence in Chief Denton's office, and Chief Denton took it to the KSP lab. Officer Page did not have possession of or access to the evidence after he turned it over to Chief Denton. As to the dates on the Request for Evidence Examination form, Officer Page explained that these were typographical errors on his part. He stated that "a lot of the time" the arrestees were still there while he would be filling out the form and would try to talk to him. He confirmed that the items listed on the form were the items he seized from Graves' residence on March 11, 2019. On cross-examination, Officer Page testified that he filled out the forms on the date of the

arrest and that it took several days to complete the Evidence/Recovered Property form dated March 16, 2019.

Chief Denton testified next. He was the designated evidence officer at the police department. Chief Denton received the evidence seized in this case from Officer Page once the officer had finished his paperwork. He explained that evidence could not be turned over to him without two forms, the KSP 41 and KSP 26 forms, which were filled out in this case. Chief Denton placed the evidence in the evidence locker once Officer Page gave it to him on March 11, 2019. He explained that it took five days to complete the Evidence/Recovered Property form due to the amount of evidence collected. The evidence was held behind three locks per the applicable code, and Chief Denton was the only person who had access to the room. The evidence was removed to be examined at the KSP lab. Chief Denton took the evidence to the KSP lab on May 21, 2019, and he picked it up on July 31, 2019, once the examination had been completed. He explained the dates on the Request for Evidence Examination form as typographical errors. Chief Denton also explained the two-month delay in taking the evidence to the KSP lab as being a result of having a small police department. It was his regular practice to wait until he had eight to ten items to be tested to take them to the KSP lab. A two- to three-month gap would be normal.

In closing, counsel for Graves argued that he did not have clear, documentary proof of where the evidence was located from March 11 to May 21, 2019. He questioned the number of alleged typographical errors on forms that Officer Page testified he completed on March 11, 2019. There were three other dates listed on these forms: January 11, March 10, and March 16, 2019. Based on the dates and questions about custody, counsel requested that the evidence be excluded. The Commonwealth argued that the testimony established an unbroken chain of custody. The court did not doubt that typographical errors occurred in this case, and it ruled that the testimony and documents were more than sufficient to establish chain of custody. Therefore, the court denied the motion. A calendar order entered October 25, 2019, memorialized this oral ruling.

Rather than proceeding to trial, Graves opted to accept the Commonwealth's offer on a plea of guilty. The Commonwealth recommended that the trafficking in methamphetamine, possession of drug paraphernalia, and PFO I charges be dismissed, leaving the trafficking in cocaine charge as the remaining charge. For that charge, the Commonwealth recommended that Graves be sentenced to ten years' imprisonment, and it opposed probation or shock probation. The offer detailed that the ten-year sentence in this case would run consecutively with other indictments in Monroe and Cumberland Counties. The drugs and paraphernalia seized were to be disposed of in accordance with

Kentucky law. Graves' motion to enter a guilty plea reflected his understanding of what his acceptance of the Commonwealth's offer would mean.

The court held a guilty plea hearing on November 13, 2019. The court proceeded with a colloquy, including informing Graves that he would be waiving his right to appeal by pleading guilty, among other rights. Graves responded to the court that he understood he would be waiving these rights. The Commonwealth informed the court that Graves would be pleading guilty to first-degree trafficking in a controlled substance, second offense, and he would be sentenced to ten years' imprisonment. Graves confirmed that was what he had agreed to and stated that he was satisfied with his counsel's advice. The court accepted Graves' plea of guilty. At this point, Graves' counsel stated that Graves might want to appeal the ruling on his motion to exclude evidence and asked the court if someone would be contacting him. The court asked if the plea was conditional; counsel responded no. The Commonwealth stated that Graves did not have a right to appeal without entering a conditional plea. Counsel thought he would retain the right to appeal the ruling, but not the final judgment or plea. The court told him that was incorrect. In order to protect Graves' right to appeal, the court entered a finding on the record that Graves had entered a conditional guilty plea to reserve his right to appeal the issue he raised in the motion.

The court entered a calendar order on November 18, 2019, reflecting that it had accepted Graves' conditional guilty plea and set forth the terms of the agreement. The court dismissed the four charges pursuant to this agreement by an order entered the same day. Finally, and also on the same day, it entered a final judgment sentencing Graves pursuant to the terms of his plea agreement. This appeal now follows.

Before we may reach the merits of Graves' appeal, we must address a preliminary issue related to the judgment on appeal that was not raised by either party. The actual final judgment does not reflect that it was entered pursuant to a conditional guilty plea. Rather, it was entered pursuant to an unconditional guilty plea, and the language of the judgment reflects that Graves had knowingly and voluntarily waived his right to appeal his case to a higher court. Based upon the guilty plea hearing and the calendar order, however, it is clear that Graves' guilty plea was conditioned upon his right to appeal the denial of his motion to exclude evidence. We consider the mistake in the judgment to be a clerical error, which is subject to correction. *See generally Fagan v. Commonwealth*, 374 S.W.3d 274, 278-79 (Ky. 2012) (addressing the distinction between a judicial error and a clerical error as being whether the error "was the deliberate result of judicial reasoning and determination" and the application of Kentucky Rules of Criminal Procedure (RCr) 10.10, which "permits a court to amend clerical errors 'at any

time on its own initiative or on the motion of any party[.]'"). While such correction should properly be made by the lower court, we shall nevertheless recognize that the plea was conditional and consider the merits of the appeal.

Graves' sole argument on appeal is that the circuit court should have granted his motion to exclude the drug evidence based upon the Commonwealth's failure to establish a credible chain of custody. While the motion was styled below as a motion in limine, we agree with Graves that it is more akin to a motion to suppress evidence for purposes of our review.

In *Simpson v. Commonwealth*, 474 S.W.3d 544 (Ky. 2015), the Supreme Court of Kentucky set forth the most current law as to our standard of review in an appeal from a ruling on a motion to suppress evidence.

> At the time of Appellant's trial, (RCr) 9.78 was in effect and governed pretrial motions to suppress evidence. RCr 9.78 provided that "[i]f supported by substantial evidence, the factual findings of the trial court shall be conclusive." Under RCr 9.78 we apply the two-step process adopted in *Adcock v. Commonwealth*, 967 S.W.2d 6 (Ky. 1998). First, we review the trial court's findings of fact under a clearly erroneous standard. *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004). Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. *See* [Kentucky Rules of Civil Procedure (CR)] 52.01; *Canler v. Commonwealth*, 870 S.W.2d 219, 221 (Ky. 1994) (citations omitted). We then "conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law." *Payton v. Commonwealth*, 327 S.W.3d 468, 471-72 (Ky. 2010) (quoting

> Commonwealth v. Neal, 84 S.W.3d 920, 923 (Ky. App.
> 2002)).
>
> Effective January 1, 2015, RCr 9.78 was
> superseded by RCr 8.27. Unlike its predecessor, RCr
> 8.27 does not specifically address an appellate standard
> of review. However, CR 52.01 provides that findings of
> fact shall not be set aside unless clearly erroneous. "A
> finding supported by substantial evidence is not clearly
> erroneous." Hunter v. Mena, 302 S.W.3d 93, 97 (Ky.
> App. 2010) (citation omitted). Consequently, the
> application of CR 52.01 leads us to the identical standard
> applied under RCr 9.78. Accordingly, while RCr 9.78
> has been superseded, the standard of review for a pretrial
> motion to suppress as stated in Adcock, Welch, Canler,
> Payton, and Neal, all of which were buttressed by RCr
> 9.78, remains substantively unaffected.

Id. at 546-47 (footnotes omitted).

"At a suppression hearing, the ability to assess the credibility of witnesses and to draw reasonable inferences from the testimony is vested in the discretion of the trial court." Pitcock v. Commonwealth, 295 S.W.3d 130, 132 (Ky. App. 2009) (citing Commonwealth v. Whitmore, 92 S.W.3d 76, 79 (Ky. 2002)). "On review, the appellate court should not reevaluate the evidence or substitute its judgment of the credibility of the witnesses for that of the jury." Commonwealth v. Suttles, 80 S.W.3d 424, 426 (Ky. 2002) (citing Commonwealth v. Jones, 880 S.W.2d 544 (Ky. 1994)). "In conducting our review, our proper role is to review findings of fact only for clear error while giving due deference to the inferences drawn from those facts by the trial judge." Perkins v. Commonwealth, 237 S.W.3d

215, 218 (Ky. App. 2007) (citing *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002)).

Kentucky Rules of Evidence (KRE) 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Our Supreme Court addressed the application of KRE 901 and chain of custody as it relates to evidence integrity in *Rabovsky v. Commonwealth*, 973 S.W.2d 6 (Ky. 1998), albeit related to blood testing:

> The more serious and ultimately fatal problem with respect to the admission of the blood test results is the total failure of the Commonwealth to establish a chain of custody of the blood samples. This issue relates to the integrity of the evidence and is an integral part of the authentication requirement of KRE 901(a). The purpose of requiring proof of the chain of custody of a blood sample is to show that the blood tested in the laboratory was the same blood drawn from the victim. R. Lawson, *The Kentucky Evidence Law Handbook*, § 11.00, p. 592 (3rd ed. Michie 1993). While the integrity of weapons or similar items of physical evidence, which are clearly identifiable and distinguishable, does not require proof of a chain of custody, *e.g.*, *Beason v. Commonwealth*, Ky., 548 S.W.2d 835 (1977), *Smith v. Commonwealth*, Ky., 366 S.W.2d 902 (1962), a chain of custody is required for blood samples or other specimens taken from a human body for the purpose of analysis. *Henderson v. Commonwealth*, Ky., 507 S.W.2d 454 (1974); *Calvert v. Commonwealth*, Ky.App., 708 S.W.2d 121, 124 (1986); *Haste v. Kentucky Unemployment Ins. Comm'n, Ky.App.*, 673 S.W.2d 740 (1984); Lawson,

-10-

*supra*, § 11.00, p. 593; 32A C.J.S. *Evidence* § 797 (1996).

Even with respect to substances which are not clearly identifiable or distinguishable, it is unnecessary to establish a perfect chain of custody or to eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that "the reasonable probability is that the evidence has not been altered in any material respect." *United States v. Cardenas*, 864 F.2d 1528, 1532 (10th Cir. 1989), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). *See also Brown v. Commonwealth*, Ky., 449 S.W.2d 738, 740 (1969). Gaps in the chain normally go to the weight of the evidence rather than to its admissibility. *United States v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988). Here, however, there was no attempt at all to establish the chain of custody of these blood samples, even though the samples apparently were transferred and stored internally within the hospital, then transferred and stored outside the hospital, first at a laboratory in Louisville, then, presumably, at another laboratory in Nashville. As Justice Palmore aptly put it in *Henderson v. Commonwealth*, *supra*:

> Hence the integrity of the evidence from the time it was relinquished by the investigative officers until it reached the laboratory analyst was not proved. We think that surely it is unnecessary to delve into the literature of the law in order to document the point that this type of carelessness in the development of important evidence during the course of a trial simply will not do. We know it is tedious and time-consuming to trace the integrity of an exhibit; in fact, it is tedious and time-consuming to have a trial at all when we think we know the defendant is guilty anyway, but it is not half as bad a nuisance to do it right the first time as it is to

-11-

> go through the whole process a second time two years later.

*Id*. at 461.

*Rabovsky*, 973 S.W.2d at 8-9.

Graves posits that, based upon the errors in the documentation of the evidence by the police department coupled with Chief Denton's stockpiling of evidence prior to taking it to the KSP lab, there was no way to know whether the evidence tested by the lab came from his home. We disagree.

Officer Page and Chief Denton testified about how the evidence in this case was handled and were able to explain the discrepancies in the dates as being typographical errors and the delay in transporting the evidence to the KSP lab as a normal course of procedure for this particular police department. This testimonial evidence is reasonable and provides substantial evidence for the circuit court's findings and ultimate ruling that the Commonwealth had established a proper chain of custody for the evidence seized from Graves' residence. There is no support for Graves' claim that the evidence transported to the KSP lab was not the evidence seized from his residence. Therefore, we cannot find any abuse of discretion in the circuit court's decision.

For the foregoing reasons, the judgment of the Monroe Circuit Court is affirmed.

JONES, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Kayla D. Deatherage
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney Kay Han
Assistant Attorney General
Frankfort, Kentucky