RENDERED:  JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1400-ME

DEMETRIUS PENNIE                                                                          APPELLANT


APPEAL FROM JEFFERSON FAMILY COURT
v.          HONORABLE JESSICA STONE, JUDGE
ACTION NO. 24-D-503563-001


LABREA MOHAMED; N.P., A MINOR                                        APPELLEES
CHILD; AND T.M., A MINOR CHILD


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, ECKERLE, AND McNEILL, JUDGES.

CALDWELL, JUDGE:  Demetrius Pennie ("Pennie") appeals from a domestic violence order ("DVO") entered by the Jefferson Family Court.  We **AFFIRM**.

**FACTS**

In late September 2024, LaBrea Mohamed ("Mohamed") filed a petition for an order of protection on behalf of herself and her minor children.  In the petition, she alleged Pennie had hit her two-year-old son on two occasions.

She also alleged he had recently come to her house unannounced, picked up a gun he kept there, "flash[ed]" the gun around her son, and started to take the gun apart on her porch. According to Mohamed, she asked Pennie to leave but he ignored her and waited to leave until he had reassembled the gun.

Mohamed also alleged Pennie had violent tendencies, which had gotten worse since she found out she was pregnant that spring. She alleged the two had been lying in bed when he suggested she have a home birth. She alleged he jumped out of bed, called her derogatory names, and "flinched" at her after she expressed concerns about a home birth due to health issues. She indicated this occurred about a week before the gun incident.

Mohamed also alleged Pennie frequently raised his voice at her and called her names. She expressed concerns about her well-being and that of her unborn child because Pennie would "get angry in random spurts" and she did not know how far he would take things if he did not get his way. She indicated she had taken steps to block him from having contact with her and stated she was unsure if he still had his gun. She acknowledged: "Things didn't get as bad as they could've gotten as far as physical abuse" but she expressed fears about his behavior escalating if she had stayed with him or remained in communication with him. She asserted she was suffering from anxiety and had installed alarms around her home due to Pennie's behavior.

She alleged Pennie's daughter's mother told her about similarly experiencing demonstrations of Pennie's alleged violent tendencies. Mohamed also alleged Pennie's daughter's mother had taken out an Emergency Protection Order ("EPO") against Pennie.

Mohamed attached an information sheet to her petition, in which she stated Pennie lived and worked in Lexington. She listed her own address in Louisville, indicating she lived there with both her two-year-old son and her five-year-old daughter.

Based on Mohamed's petition, the family court entered an EPO against Pennie on September 24, 2024. The case proceeded to a hearing to determine if a DVO should be issued. Both Mohamed and Pennie were represented by counsel at the hearing, which occurred in early November 2024. Additionally, a Guardian *ad Litem* ("GAL") represented Mohamed's minor children at the hearing.

By counsel, Pennie argued the petition filed on behalf of Mohamed's minor children should be dismissed. He pointed out that he had no biological relationship with Mohamed's children. He also asserted he had never lived with Mohamed or her children. So, he contended the children were outside the protection of Kentucky's domestic violence statutes. The family court denied his request to dismiss the petition, stating there was a sufficient basis to proceed with

the petition since the children were Mohamed's children and since the petition alleged Pennie had hit Mohamed's son.

Next, Pennie argued the family court should strike portions of the petition as hearsay. After taking a recess for the court to scrutinize the petition, the court excluded part of the petition on hearsay grounds – specifically, Mohamed's descriptions of hearing about alleged domestic violence from Pennie's daughter's mother.

Pennie's counsel pointed out the DVO also alluded to an EPO issued to a third party in 2024 and argued this was an improper attempt to offer character evidence in violation of Kentucky's evidentiary rules. The court noted the petition did not mention Mohamed's hearing of the EPO from someone else, but simply stated an EPO had been entered against Pennie so the statement was not hearsay.[1] Mohamed's counsel argued this statement about the EPO should be admitted for purposes of determining Mohamed's state of mind and whether domestic violence may occur again. The family court overruled Pennie's objection to its not excluding the statement about entry of the third-party EPO from the petition, stating it could consider this for purposes of determining whether domestic violence may occur again.

---

[1] The court appears to be referring to the following statement from Mohamed's petition: "In early September 2024 I learned his [Pennie's] daughter's mother had already taken an EPO out on him and it was granted." (Record ("R.") p. 2).

Then the court began hearing the evidence, first verifying that Mohamed intended for her petition to be considered part of her testimony. Mohamed and Pennie both testified. Mohamed explained in her testimony that she meant that Mohamed had thrown his body toward her when she described how he "flinched" at her in the petition. In Pennie's testimony, he admitted the parties had argued when he suggested a home birth and he became frustrated, but he denied he was angry.

Mohamed testified to Pennie's hitting her son twice. She said the first time she heard a pop while returning to the room where Pennie and her son were. She testified her son started crying and she asked Pennie why he did that. She said Pennie responded by stating her son bit him. Mohamed testified the second time her son was playing with Pennie's daughter and the children were kicking each other. She recalled seeing Pennie slap her son on the leg and her son's appearing confused although he did not cry. She testified Pennie said her son needed more discipline.

Pennie denied ever hitting Mohamed's son and testified to only disciplining him through gentle parenting techniques such as having conversations with him. When asked about Mohamed's statement that Pennie said her son had bitten him, Pennie said he did not recall the incident.

Mohamed admitted that, after being diagnosed with something called "BV" during her pregnancy, she sent Pennie a text stating he would "need more than a pistol" if she were diagnosed with something worse than BV. Mohamed admitted she had been angry when she sent this text, but she said she did not intend to hurt Pennie. Pennie testified this text frightened him and caused him to miss work. Upon questioning by the court, Pennie admitted he was afraid of other people Mohamed associated with rather than Mohamed herself and his fear of her associates caused him to miss work.

Mohamed also testified that when she asked Pennie to return to her a set of keys to her house, he threw them at her. Pennie denied throwing the keys at Mohamed. Mohamed testified to feeling fear of imminent physical injury based on incidents including Pennie's showing up unannounced, retrieving his gun and flashing it in front of her son, and taking the gun apart and reassembling it while ignoring her requests for him to leave.

Mohamed also testified that she had recently heard about allegations of domestic violence and the entry of an EPO from Pennie's daughter's mother. Pennie lodged a hearsay objection. The court allowed Mohamed to testify briefly about what she had heard from Pennie's ex-partner. The court indicated it would consider the effect Mohamed's hearing of another EPO and allegations of domestic

violence had on Mohamed's state of mind, but it would not consider this evidence for purposes of determining whether domestic violence had occurred.

The GAL asked the family court to take judicial notice that an EPO had recently been entered against Pennie in Bourbon County, which prohibited Pennie from having firearms. Pennie's lawyer stated he was unaware of and unable to review the Bourbon County EPO previously, apparently because it was confidential. However, Pennie admitted the Bourbon County EPO had been issued against him and forbade him from possessing firearms. He also stated he surrendered his firearm after learning of the prohibition.

The family court took judicial notice of the August 2024 entry date of the EPO entered in Bourbon County. (However, based on our review, the Bourbon County EPO was never formally admitted into evidence in the present case, and it is not included in the written record on appeal.)

The family court orally expressed interest in determining whether Pennie was aware of the court order to relinquish his firearms before the alleged gun incident at Mohamed's house. Ultimately, based on the date of entry of the Bourbon County EPO, the court stated it was unlikely Pennie was aware of the firearm prohibition when he retrieved his gun from Mohamed's house so it would not consider the prohibition when making its decision.

The family court also noted conflicts between Mohamed's and Pennie's testimony. It orally acknowledged that, like many other domestic violence cases, this case hinged on conflicting testimony and required the court to decide whether it believed what "he said" or what "she said." The court orally stated it found Mohamed more credible than Pennie – in part because Pennie denied even recalling the first incident when Mohamed perceived he hit her son and claimed Pennie said her son bit him.

Shortly after the hearing, the family court entered a DVO. At the top of the form, the court checked "Petitioner filing on his/her own behalf" but it did not check the box next to "Petitioner filing on behalf of minor identified herein." The family court ordered that Pennie be restrained from committing further acts or threats of abuse and from any unauthorized contact with Petitioner (Mohamed) and other specified persons – namely, T.M. and N.P., Mohamed's minor children. The DVO was to be effective for one year.

The family court also made numerous written factual findings. It found Mohamed and Pennie had lived together, despite their respective Louisville and Lexington addresses, based on testimony that Pennie kept items at Mohamed's house and spent nights there when the children were present. Noting various conflicts between Mohamed's and Pennie's testimony, the court found Mohamed

more credible than Pennie and explained why. It found domestic violence had occurred (both to Mohamed and her son) and may occur again.

Pennie filed a timely notice of appeal. On appeal, Pennie argues that the family court should have dismissed the petition on behalf of the minor children because there was no statutorily qualifying relationship to seek a DVO in his view. He also contends that the family court improperly admitted evidence about alleged acts of domestic violence or orders of protection involving Pennie and third parties. Lastly, he asserts the evidence was insufficient to support issuing a DVO.

Further facts will be discussed as we address Pennie's arguments.[2]

---

[2] We discern no substantial failure to comply with appellate briefing rules which calls for our imposing sanctions such as striking briefs. *See* Rules of Appellate Procedure ("RAP") 31(H)(1). However, the first item attached to the appendix to the appellant brief is not the judgment under review (the DVO). Instead, Mohamed's petition for an order of protection was placed first in the appendix to the appellant brief. *See* RAP 32(E)(1)(a), providing in pertinent part: "The appellant shall place the judgment, opinion, or order under review immediately after the appendix list so that it is most readily available to the court." Also, the index to the appendix does not refer to where items in the appendix may be found in the record on appeal. *See* RAP 32(E)(1)(d).

Moreover, as noted in the appellee brief, the appellant brief's citations to unpublished Kentucky appellate opinions for our consideration are not accompanied by the required statements that such unpublished opinions are not binding authority. *See* RAP 41(A)(4).

Though we perceive these noted errors as minor in nature, we direct Pennie's counsel to the appellate briefing resources available at our court website – which include appellate briefing checklists, a basic appellate handbook, and the Rules of Appellate Procedure. *See* https://www.kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx. (Last accessed May 19, 2025.) We note we are not obligated to leniently overlook failures to comply with appellate briefing rules in the future – especially if such non-compliance repeatedly occurs. *See generally J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 153-54 (Ky. App. 2024).

# ANALYSIS

## Standard of Review

As we recently stated:

> We review the entry of a DVO for whether the trial court's finding of domestic violence was an abuse of discretion. Our review of the trial court's factual findings is limited to whether they were clearly erroneous. A trial court's factual determination is not clearly erroneous if it is supported by substantial evidence, which is evidence of sufficient probative value to induce conviction in the minds of reasonable people.

*Johnston v. Johnston*, 639 S.W.3d 428, 431 (Ky. App. 2021). (Citations omitted.)

However, we review the family court's determinations on purely legal issues such as statutory interpretation *de novo* – meaning without deference. *Jones v. Jones*, 617 S.W.3d 418, 423 (Ky. App. 2021) (citing *Artrip v. Noe*, 311 S.W.3d 229, 231 (Ky. 2010)).

## I. No Reversible Error in Family Court's Allowing Petition to Proceed on Behalf of Mohamed's Minor Children

First, we consider Pennie's argument that the family court erred in allowing the hearing to proceed on the petition filed on behalf of Mohamed's children. Citing KRS[3] 403.720 and KRS 403.725, he contends that he and the children share no domestic relationship and therefore his motion to dismiss the petition on behalf of the children should have been granted.

---

[3] Kentucky Revised Statutes.

KRS 403.725(1) states: "A petition for an order of protection may be filed by: (a) A victim of domestic violence and abuse; or (b) An adult on behalf of a victim who is a minor otherwise qualifying for relief under this subsection." KRS 403.720(2)(a) defines *domestic violence and abuse* as including physical injury, "the infliction of fear of imminent physical injury" or "assault between family members or members of an unmarried couple[.]"

KRS 403.720(3) defines *family member* as: "a spouse, including a former spouse, a grandparent, a grandchild, a parent, an adult sibling, a child, a stepchild, or any other person living in the same household as a child if the child is the alleged victim[.]" KRS 403.720(6) defines *member of an unmarried couple* as: "each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who are living together or have formerly lived together[.]"

Pennie contends he and Mohamed's children are not family members since he is not a parent to Mohamed's children nor does he fill any other role specified by KRS 403.720(3) such as spouse, stepparent, or grandparent. Moreover, he asserts he and Mohamed's children did not live together. However, the family court found Pennie had lived with Mohamed and her children based on his spending nights at her house with the children present, having a key to the

-11-

house, and leaving items there. And these factual findings are supported by substantial evidence and are not clearly erroneous.

Likewise, while Pennie and Mohamed may not have shared a residence full-time or for an extended period, there is obviously evidence to support a finding of their previously living together with her children on at least a part-time or temporary basis. *See Barnett v. Wiley*, 103 S.W.3d 17, 20-21 (Ky. 2003) (stating some evidence of the parties' having shared a residence is required to make a finding they had lived together for purposes of KRS 403.720 and vacating a DVO due to lack of evidence that the parties "ever shared living quarters, either permanently or on a part-time or temporary basis"). Furthermore, domestic violence statutes should be construed broadly to protect victims and prevent future domestic violence. *Id.* at 19. And a court may properly consider several factors including evidence of the parties' joint use of property and their having sexual relations in determining whether they lived together. *Id*. at 20. In sum, we discern no error in the family court's finding the parties had lived together – especially given evidence of their joint use of Mohamed's residence and the undisputed fact of Mohamed's and Pennie's former sexual relationship.

Next, we address Pennie's assertion that he and the children are not members of an unmarried couple as defined by KRS 403.720(6). Although KRS 403.720(6) defines an unmarried couple as including "any children of that couple,"

Pennie contends this refers solely to the children the couple has in common – i.e., the children of both partners, not just either partner.

Furthermore, Pennie asserts that KRS 403.725(3)'s provision stating a petition may be filed by a member of an unmarried couple on behalf of a minor family member has been interpreted to preclude allowing the filing of a petition under the facts here (*i.e.*, on behalf of children other than those of the respondent or on behalf of the children of one but not both adult parties). He cites *Hunter v. Mena*, 302 S.W.3d 93 (Ky. App. 2010), in which this Court held a provision in a DVO prohibiting the respondent's contact with his minor nephew must be stricken. *Id*. at 96. Pennie quotes a footnote from *Hunter* in which we stated: "We do not believe the legislature had this scenario in mind when it enacted KRS 403.725(3) but more likely envisioned the protection of the child of a domestic violence perpetrator by the perpetrator's partner who was not related to the child." *Id*. at 96, n.2.

However, as Mohamed points out in the appellee brief, the facts in *Hunter* do not closely resemble the facts of this case. We stated the family court had correctly rescinded a DVO affecting the minor nephew because the petition on his behalf was filed by an adult who could not qualify as the minor's next friend due to the adult's residing outside Kentucky. *Id*. at 95. We also noted the family court had entered a DVO which prohibited the respondent from having contact

with his minor nephew upon another petition filed solely on behalf of the adult petitioner (the respondent's ex-girlfriend) and not on behalf of the respondent's minor nephew. *Id*. at 96.

So, *Hunter* is distinguishable because Mohamed was indisputably a resident of Kentucky when she filed the petition, and she expressly did so on behalf of her children as well as herself. Moreover, nothing in *Hunter* directly addresses whether a petition for an order of protection may be properly filed on behalf of a child of one but not both adult members of an unmarried couple.[4]

Mohamed also points out the family court had authority under KRS 403.740(1)(a) to issue a DVO restraining the respondent from having contact with "the petitioner or other person specified by the court" assuming statutory requirements for issuing a DVO were met. This alone appears to be sufficient statutory authority for the family court to restrain Pennie from having contact with Mohamed's children under the facts of this case.

Furthermore, we agree with Mohamed that the family court did not err in refusing to dismiss the petition on behalf of Mohamed's children. The family

---

[4] Oddly, KRS 403.720(6)'s language suggests the children of an unmarried couple are members of the couple since it defines a *member of an unmarried couple* as meaning: "each member of an unmarried couple which allegedly has a child in common, **any children of that couple,** or a member of an unmarried couple who are living together or have formerly lived together[.]" (Emphasis added.)

-14-

court specifically found that Mohamed and Pennie were expecting a child together[5] and had lived together based on evidence of Pennie's spending nights at Mohamed's residence, keeping items there including a gun, and previously having keys to Mohamed's residence. These factual findings were supported by substantial evidence. Thus, Mohamed and Pennie were members of an unmarried couple as defined by KRS 403.720(6) since they formerly lived together and were expecting a child together.[6]

Also, Mohamed's children come within KRS 403.720(3)'s definition of *family member* which includes "a child . . . or any other person living in the same household as a child if the child is the alleged victim[.]" Mohamed alleged

---

[5] Both Mohamed and Pennie testified that Pennie was probably the biological father of the child Mohamed was pregnant with during the DVO proceedings before the family court. Moreover, as the family court judge orally noted, Pennie appeared to accept that the unborn child was his and desired to be involved with its care based on his bringing over baby items and the like.

[6] *See Boyd v. Weisenberger*, No. 2021-CA-0595-ME, 2022 WL 815423, at \*6 (Ky. App. Mar. 18, 2022) (unpublished) (noting parties never lived together, but finding petitioner's testimony that she was pregnant with the respondent's child sufficient to support a determination that petitioner qualified as a member of an unmarried couple because the parties allegedly had a child in common, albeit one who had not been born yet). *See also id.* at \*7 (noting KRS 403.720's definition of unmarried couple includes one who "allegedly has a child in common" and stating: "the fact that the child had not yet been born seems to present a situation which demonstrates the very purpose for the legislature's inclusion of the word 'allegedly' in the statutory definition. Had the child been born, it would have been subject to testing to prove or disprove paternity and there would be no need to use the term 'allegedly'"). While this unpublished opinion is not binding authority, RAP 41(A), its reasoning is persuasive.

-15-

her son was the victim of abuse by Pennie and both her daughter and her son lived in the same household.[7]

We discern nothing in KRS 403.715 *et seq*. which prohibits one from filing a petition for a DVO on behalf of the minor child(ren) of one but not both adult members of an unmarried couple who allegedly have a child in common or who currently live or formerly lived with each other. *See* KRS 403.720(6); KRS 403.725(1).

Moreover, to the extent that it is necessary to construe the term *children of that couple* in KRS 403.720(6), this term, by itself, is ambiguous – as demonstrated by Mohamed's and Pennie's contrary yet reasonable interpretations of this term.[8] *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 719 (Ky. 2012) (if undefined terms in a statute are subject to more than one reasonable interpretation, they are ambiguous). However, any ambiguity in the term *children*

---

[7] Although not discussed in the parties' briefs, we note Mohamed testified that her daughter was usually not around when Pennie spent the night at her house because the daughter often spent time with her (Mohamed's daughter's) father. Nonetheless, the two children lived in the same household according to Mohamed's sworn petition and testimony. And we perceive no reversible error in the family court's finding that Pennie, Mohamed and her two children had lived together based on evidence that Pennie spent nights in Mohamed's home when the children were there, had keys to her home, and left items including a gun there. Moreover, even though Mohamed's daughter did not always spend the night at the same time as Pennie, Mohamed did not testify to her daughter's living with her father all the time and Mohamed listed her daughter as a resident in Mohamed's home in her sworn petition for an order of protection.

[8] In contrast to Pennie's argument that statutory references to the children of the couple mean only the children of both adult members of the couple, Mohamed asserts the family court was not wrong in interpreting this phrase to include the children of either adult member of an unmarried couple.

-16-

*of that couple* in KRS 403.720(6) is easily and properly resolved by considering KRS 403.715(1)'s directive that KRS 403.715 *et seq*. be interpreted to afford short-term protection to victims. *See Fell*, 391 S.W.3d at 719 ("The particular word, sentence or subsection under review must also be viewed in context rather than in a vacuum; other relevant parts of the legislative act must be considered in determining the legislative intent."). *See also id*. at 721-22 ("As important as it is for a court to scrutinize the particular statute *in toto,* our statutory construction principles also mandate considering the statute in context with other statutes surrounding it . . . . This comes as no surprise because given that the cardinal rule of statutory construction is discerning legislative intent, it is entirely logical for the judiciary to see what else our General Assembly has said on the particular topic underlying the controversy.").

Given the clear directive in KRS 403.715(1) to construe language in KRS 403.715 *et seq*. to provide protection to victims, we see no error in the family court's construing the term *children of that couple* as including the minor children of either adult member of the couple.

In sum, even applying the non-deferential *de novo* standard of review, the family court did not err in interpreting Kentucky domestic violence statutes to allow for proceedings on the petition filed on behalf of the children here. Moreover, to the extent that our reasoning differs from that expressed by the

-17-

family court, we have authority to affirm based on independent grounds.  *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014). Next, we address the family court's handling of evidentiary issues.

## II.    No Reversible Error in Family Court's Evidentiary Rulings

We review the family court's rulings on the admissibility of evidence for abuse of discretion.  *See generally Abdur-Rahman v. Peterson*, 338 S.W.3d 823, 828 (Ky. App. 2011).

Pennie contends the family court abused its discretion by allowing the introduction of evidence about alleged acts of domestic violence or domestic violence orders involving Pennie and third parties over his objection.  He contends this evidence should have been excluded pursuant to KRE[9] 404(b), which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible:
>
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
>
> (2) If so, inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

We discern no reversible error, however.

---

[9] Kentucky Rules of Evidence.

-18-

As Mohamed points out in her appellee brief, the family court excluded on hearsay grounds a portion of Mohamed's petition in which she alleged hearing about Pennie's alleged history of domestic violence from his ex-partner. Also, when Mohamed alluded to hearing of Pennie's having a history of domestic violence or having protective orders entered against him in her trial testimony, the family court judge orally stated she would consider this testimony about secondhand information only for the purpose of determining Mohamed's state of mind – but not for determining whether domestic violence had occurred.

Moreover, based on our review of the recorded hearing, the family court judge made a point of determining when Mohamed had gotten this secondhand information about alleged prior protective orders and/or domestic violence history. And after ascertaining that Mohamed did not learn of this alleged history until after the specific interactions with Pennie which she referred to her in her petition and testimony, the family court judge orally stated Mohamed's testimony about hearing Pennie had a history of domestic violence or protective orders would not substantially affect the court's decision.

The GAL asked the court to take judicial notice of the entry of an EPO against Pennie in Bourbon County in early August 2024 and the fact this order forbade Pennie from having firearms. The family court judge orally expressed interest in determining when this other EPO had been entered and when

-19-

Pennie became aware of the firearm prohibition. After ascertaining that Pennie did not become aware of the Bourbon County EPO or its firearm prohibition until August 2024 but that the incident involving the gun at Mohamed's house had occurred in late July 2024, the family court noted it could not verify Pennie had notice of the firearm prohibition before his picking up and otherwise handling his gun at Mohamed's house. So, the family court judge orally stated evidence about the Bourbon County EPO or its firearm prohibition would not substantially weigh in its decision.

Even more significantly, as Mohamed aptly points out in her brief, the family court did not mention any evidence about prior protective orders or domestic violence history concerning Pennie and third parties in its written findings. Instead, the family court made detailed written factual findings about the interactions between Pennie, Mohamed, and her children and based its decision on these findings about the parties' interactions.

In sum, the family court's findings that domestic violence occurred and that it might occur again are not based on any evidence of prior protective orders or domestic violence history relating to third parties. Thus, any error in its admission of any evidence of domestic violence history or prior protective orders relating to third parties was harmless and does not merit relief on appeal. *See* CR[10]

---

[10] Kentucky Rules of Civil Procedure.

61.01; KRE 103(a); *Prater v. Cabinet for Human Resources, Commonwealth of Ky.*, 954 S.W.2d 954, 959 (Ky. 1997) ("Admission of incompetent evidence in a bench trial can be viewed as harmless error, but only *if the trial judge did not base his decision on that evidence*") (emphasis in original).[11] Next, we address Pennie's argument that the evidence was insufficient to support the issuance of the DVO.

III. **No Reversible Error in Family Court's Findings that Domestic Violence had Occurred and May Occur Again, Despite Pennie's Challenge to the Sufficiency of the Evidence**

KRS 403.740(1) states: "Following a hearing ordered under KRS 403.730, if a court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur, the court may issue a domestic violence order[.]" A finding by a preponderance of the evidence simply means a finding of more likely than not. *See, e.g.*, *Johnston*, 639 S.W.3d at 431.

---

[11] Mohamed also argues evidence about prior protective order history could have been properly admitted pursuant to KRS 403.735. *See also Walker v. Walker*, 520 S.W.3d 390, 392 (Ky. App. 2017). However, the family court did not discuss KRS 403.735 nor did the parties bring this statute to the family court's attention based on our review of the record. Moreover, we decline to determine whether the parties were provided with the protective order history information in accordance with the Rules of Civil Procedure, as required by KRS 403.735(1)(a). "As an appellate court, we review judgments; we do not make them." *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014).

Most importantly, the family court made clear that it did not accord any significant weight to the information about prior protective orders or domestic violence history pertaining to third parties in determining whether Pennie had engaged in domestic violence against Mohamed and her son and whether domestic violence may occur again. Thus, we decline to address the hypothetical issue of whether the evidence of the prior EPO could have been properly admitted pursuant to KRS 403.735. Similarly, we decline to discuss the non-binding unpublished Kentucky appellate opinions cited by Pennie for our consideration. *See* RAP 41(A).

Moreover, when reviewing the family court's factual findings for clear error, we must extend great deference to the family court's assessment of witness credibility and its weighing of the evidence. *See* CR 52.01; *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

Nonetheless, Pennie suggests the family court's decision must be reversed based on insufficiency of the evidence.

Pennie notes the definition of *domestic violence* in KRS 403.720(2):

"Domestic violence and abuse" means:

(a) Physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple; or

(b) Any conduct prohibited by KRS 525.125, 525.130, 525.135, or 525.137, or the infliction of fear of such imminent conduct, taken against a domestic animal when used as a method of coercion, control, punishment, intimidation, or revenge directed against a family member or member of an unmarried couple who has a close bond of affection to the domestic animal[.]

Pennie argues Mohamed failed to present evidence of domestic violence as defined in KRS 403.720(2) and he finds fault with the family court's weighing of the evidence and determinations of witness credibility. He notes Mohamed admitted he never made physical contact with her during the incidents she complained of in her petition and her testimony. Pennie also contends

-22-

Mohamed presented no evidence of "physical injury, serious physical injury, stalking, sexual assault, strangulation, assault, or the infliction of fear of such acts between family members or members of an unmarried couple." However, as previously discussed, the family court made factual findings (which were not clearly erroneous) supporting its determinations that Mohamed and her children qualified as family members or members of an unmarried couple as defined by KRS 403.720(3) & (6).

Moreover, the family court also made a properly supported factual finding that Pennie twice hit Mohamed's son, once hard enough to make him cry – essentially finding Pennie caused the son physical injury. And even though Mohamed admitted that Pennie had not physically hurt her, evidence of physical injury is not strictly required for a finding of domestic violence. Instead, a court may properly find domestic violence based on a showing by a preponderance of the evidence that the respondent's conduct inflicted fear of imminent physical injury on the petitioner. KRS 403.720(2). *See also Hohman v. Dery*, 371 S.W.3d 780, 782-83 (Ky. App. 2012).

The family court did so here – specifically finding that, despite any lack of physical contact between Pennie and Mohamed during the complained-of incidents, Pennie's conduct inflicted on Mohamed a fear of imminent physical

injury. Obviously, the family court believed Mohamed when she testified to such a fear of imminent physical injury. Pennie asserts this was erroneous.

After noting the lack of evidence of physical injury to Mohamed, Pennie asserts Mohamed's "testimony focused solely on the Appellant disarming a firearm in her presence, with her stated fear stemming from the firearm potentially discharging accidentally." However, the family court stated it found Mohamed's testimony credible and compelling and it specifically found Pennie's "acts of staying to take apart and put back together his firearm after being asked to leave a threat that placed [Mohamed] in fear of imminent harm."

We discern no error in the family court's reasonably inferring that, under the circumstances (including Pennie's non-compliance with Mohamed's requests for him to leave and his manipulating a gun in her and her son's presence), Pennie's conduct caused Mohamed to fear imminent physical injury. *See generally Hohman*, 371 S.W.3d at 783 (despite petitioner's and respondent's conflicting accounts, "we conclude the evidence presented was sufficient for the court to reasonably infer that [respondent's] conduct caused [petitioner] to fear imminent physical injury" especially since "the family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented"). *See also Williford v. Williford*, 583 S.W.3d 424, 429-30 (Ky. App. 2019).

Nonetheless, despite the family court's prerogative to make reasonable inferences from the evidence as well as to weigh the evidence and to assess witness credibility, Pennie asserts the family court erred in not finding his testimony more credible than Mohamed's. According to Pennie's brief:

> No additional evidence was presented to challenge the Appellant's [Pennie's] credibility, aside from the court's erroneous oral finding that the Appellant never denied the Appellee's [Mohamed's] claim that her son had bitten him. In reality, the Appellant explicitly testified that he did not recall such an incident ever occurring.
>
> This factual error in the court's findings critically undermines the accuracy of its conclusions, as well as its assessment of credibility between the parties. Consequently, the court's findings of domestic violence are not supported by substantial evidence.

Based on our review of the hearing, the family court judge made oral statements indicating she did not believe Pennie's denials of hitting Mohamed's son because Mohamed testified to Pennie's telling her he had been bitten by Mohamed's son after the child cried, but Pennie denied hitting the child or even recalling the incident. The judge questioned why Pennie would have told Mohamed the child bit him rather than just denying "it" (presumably referring to hitting the child) and the judge stated she believed Pennie hit the child hard enough to make him cry.

-25-

The family court's written findings (which prevail over any inconsistent oral findings)[12] note Mohamed's testimony that Pennie hit her son twice. The court further found Mohamed testified that the first time, she had heard a pop and her son started crying and Pennie said her son bit him. It further found Mohamed saw Pennie slap her son on the leg and heard Pennie call her son "a 'N' word" the second time. The court also found Pennie denied ever hitting Mohamed's son and stated Pennie testified Mohamed's son never bit him.

Even assuming *arguendo* there was some error in the family court's understanding of whether Pennie denied ever having been bitten by the child, the family court made a properly supported finding that Pennie had twice hit the child. Moreover, whether Mohamed's son had ever bitten Pennie was not an essential part of what the family court was tasked with deciding; *i.e.*, whether Pennie had engaged in domestic violence towards Mohamed or her children and whether domestic violence may occur again. Thus, if there was any error in the family court's factual findings about whether Pennie denied being bitten by Mohamed's son, such error was harmless. *See* CR 61.01.

---

[12] *See Younger v. Evergreen Group, Inc.*, 363 S.W.3d 337, 340 (Ky. 2012) (citing *Commonwealth v. Taber*, 941 S.W.2d 463, 464 (Ky. 1997) (court's written statements prevail over inconsistent oral statements)). *Taber*, 941 S.W.2d 463, was overruled on other grounds by *Keeling v. Commonwealth*, 381 S.W.3d 248, 258-59 (Ky. 2012).

Furthermore, despite Pennie's protestations about the family court's finding Mohamed's testimony more credible than his, the family court set forth reasonable explanations for doing so in its written findings. For example, the family court noted Mohamed admitted being angry and overreacting to her BV diagnosis when she sent Pennie a text saying he would need more than a pistol if she were diagnosed with something worse than BV. In contrast, the court noted Pennie denied being angry during the argument about home birth although he admitted to being frustrated. The court also stated it found Pennie's testimony about missing work due to Mohamed's text message misleading because he later clarified that his missing work was not due to Mohamed's actions but due to his fears of people associated with Mohamed.

The family court was not even necessarily obligated to offer these explanations for finding Mohamed's testimony more credible than Pennie's. But having reviewed these explanations, the factual findings underlying the court's credibility assessments are supported by substantial evidence (except for any harmless error in findings about whether Pennie denied being bitten by Mohamed's son). And again, we must defer to the family court's assessment of witness credibility. *See, e.g.*, CR 52.01; *Asente*, 110 S.W.3d at 354.

Given the evidence in the record and the deference we must extend to the family court's assessment of witness credibility and the weighing of the

evidence, the family court's finding of infliction of fear of imminent physical injury is not clearly erroneous. Moreover, we do not discern any abuse of discretion in the family court's findings of domestic violence towards Mohamed and her son or in its issuance of the DVO. *See Johnston*, 639 S.W.3d at 431.

In sum, we discern no reversible error in the family court's issuance of the DVO. Further arguments raised in the parties' briefs which we have not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the Jefferson Family Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

R. Zachary Meihaus
Louisville, Kentucky

BRIEF FOR APPELLEE LABREA MOHAMED:

Molly B. Stanley
Louisville, Kentucky

NO BRIEFS FILED FOR OTHER APPELLEES.